Charles Margett, J.
This is a taxpayer’s action brought pursuant to section 51 of the General Municipal Law to enjoin the construction of a golf driving range and accessory buildings on 30 acres of land in Kissena Park. The plaintiffs move for summary judgment and the defendants cross-move for judgment on the pleadings.
No question of fact is presented. Defendant Morris, as Commissioner of Parks, has entered into an agreement with Shields & Dean Concessions, Inc., for the erection and operation of a golf driving range, facilities for golf instruction and the sale of golf equipment, facilities for the sale of refreshments and facilities for the private parking of automobiles. The term of the agreement is 20 years, which term may be shortened upon the happening of certain conditions.
The plaintiffs contend that the agreement is a lease of real property and accordingly unlawful pursuant to sections 383 and 384 of the New York City Charter, since the Commissioner entered into it without the. permission of the Board of Estimate, and since even the Board of Estimate is prohibited by subdivision b of section 384 of the City Charter from granting a léase for a term in excess of 10 years. The defendants contend that the agreement constitutes a license, the granting of which is in the power of the Commissioner. The only issue to be decided here to whether the agreement is a lease or a license.
Heretofore the plaintiffs moved in this court for a temporary injunction. The court, per Stier, J., in a memorandum dated February 27, 1963 (N. Y. L. J., March 1, 1963, p. 19, col. 3), decided in their favor and expressly held that the agreement constitutes a lease.
The court recognizes that Justice Stier’s decision on an application for a provisional remedy does not constitute the “law of the case ’ ’. It is, however, entitled to give that decision considerable weight. In a well-considered memorandum, Justice Stier thoroughly analyzed the terms of the agreement and the applicable law. In opposition to the motion before him, the defendants attacked the sufficiency of the complaint and argued that the agreement constituted a license. In order to find the *426 complaint legally sufficient it was necessary that the court hold the agreement to be a lease.
As Justice Stier pointed out in his opinion: “‘It is the transfer of absolute control and possession of property at an agreed rental which differentiates a lease from other arrangements dealing with property rights.’ (Feder v. Caliguira, 8 N Y 2d 400, 404, supra.) ‘ The test of the distinction between a lease and a license depends, substantially, upon the question whether or not the contract or authority granting the right to enter upon the land of another confers upon the person so entering an interest in the land so as to affect the other in the exclusive use of his land.’ (Mehlman v. Atlantic Amusement Co., 65 Misc. 25, 27, supra.) ” He then noted inter alia that the argreement was for a term of 20 years-, that the so-called “ licensee ” was to have “ unrestricted use ” of the premises; that at the expiration or sooner termination of the agreement the “licensee” shall 11 quit and surrender ” the premises and that if the Commissioner exercised his option to cancel the ‘ ‘ license ’ ’ in the event of a change in stockholders, officers, directors or executive employees of the “licensee ” without the Commissioner’s consent, he was empowered to “ re-enter the premises either by force or otherwise ”. The court then stated: “In the opinion of this court those provisions stamp this agreement a lease of the specific property involved, notwithstanding the commissioner’s control over the activities to be conducted thereon. Indeed, that he reserved such control is understandable since the lease was one of public property devoted to a park use. In the words of the Court of Appeals in an analogous situation, ‘ As the principal and primary use of the grounds of the association was for religious purposes, it is manifest that the plaintiff must necessarily maintain the strictest supervision of its property ’ (Round Lake Assn. v. Kellogg, 141 N. Y. 348, 356). And as the same ¡court observed in another case, ‘ When the plaintiff leased or granted the cottage plots it might have subjected the leases to such conditions and the tenants to such covenants as it saw fit to impose.’ (Thousand Island Park Assn. v. Tucker, 173 N. Y. 203, 212.) ”
Matter of Terrell v. Moses (4 A D 2d 171 [1st Dept.]) was a taxpayer-instituted article 78 proceeding which was concerned with a so-called “license” to present a series of theatrical productions, during a four-year period in Central Park. The agreement was almost identical in many respects with the agreement now before this court, differing mainly in that in some respects it had less of the attributes of a lease than the latter. On page 8 of his corrected memorandum, Justice Stier compared *427 the agreement in Matter of Terrell v. Moses (supra) with the agreement in the case at bar: “The Commissioner retained considerable control over the operations of the activity. The licensee undertook to repair, to hold the City harmless, and to obtain workmen’s compensation and liability insurance. It was ‘ expressly understood and agreed that no building space, or equipment is leased to Licensee, ’ except that during the term of the license, the licensee was to have the ‘ use ’ (not, as here, 1 unrestricted ’ use) of the premises, the right to occupy the spaces assigned and to continue in possession thereof so long as it strictly complied with each and every other term and condition. And, finally, the licensee agreed to make weekly (here monthly) payments based upon a percentage of receipts.”
In Matter of Terrell v. Moses (supra), the Appellate Division stated Per Curiam (p. 172) that: “ The document appears to have all of the attributes of a lease affecting public property (Williams v. Hylan [223 App. Div. 48, affd. 248 N. Y. 616]; Williams v. Gallatin, 229 N. Y. 248; Gushee v. City of New York, 42 App. Div. 37, 40). As already indicated, if the agreement in question be a lease, the Commissioner may not enter into it. Were the question properly before us, we might not conclude, as did the learned court at Special Term, that the agreement referred to is a license.”
This court, however, is of the opinion that the subject agreement entered into by the Commissioner with Shields & Dean Concessions, Inc., is a lease of real property. As such, it was illegal for the Commissioner to enter into it without the consent of the Board of Estimate. Since it was for a term longer than 10 years, not even the Board of Estimate could lawfully have granted such a lease.
The plaintiffs’ motion is granted and the defendants’ cross motion is denied.