OPINION OF THE COURT
Charles H. Cohen, J.
The question presented to the court, upon an agreed statement of facts, is whether plaintiff is entitled to recover against defendant for hospital expenses in the amount of $836 incurred between July 21, 1976, and July 26, 1976, by reason of injuries sustained in a motor vehicle accident on July 16, *446 1976, for which plaintiff had full mandatory New York no-fault coverage.
Plaintiff, an employee of the City of New York, was entitled to coverage under the city’s hospitalization contract with defendant. This contract dated July 1, 1967, contained no exclusion of benefits where mandatory no-fault benefits were available. However, on January 15, 1975, a letter sent by the defendant dated September 30, 1974, was signed by Leo Grus-kin (described in the letter as "Chief Administrator, N.Y.C. Department of Personnel”) whereby it was agreed that defendant’s coverage would apply "only when no-fault does not.”
Based upon this letter, defendant takes the position that it is not liable for the hospital expenses. Plaintiff contends that a mere letter signed by Leo Gruskin "Chief Administrator N.Y.C. Department of Personnel”, is insufficient to limit the hospitalization coverage. Defendant replies by claiming that on November 8, 1976, a properly authorized revised hospitalization contract signed by Mayor Beame on behalf of the city, was entered into between the city and defendant which contained a rider eliminating hospitalization benefits where no-fault benefits were available. Plaintiff contends that this amounts to termination of benefits pursuant to 11 NYCRR 55.2 and that such termination is ineffective for failure to comply with that regulation.*
In order to answer the question presented, it is necessary to analyze the exhibits submitted (consisting of a one-page Exhibit A and a 76-page Exhibit B) relating to the hospital coverage granted by defendant to the employees of the city and to determine the rights of a city employee with respect to hospitalization benefits in July, 1976.
The hospitalization contract before the court dated July 1, 1967, entered into between defendant and the city provides for hospitalization coverage for the city’s employees "for a period of one year beginning * * * on July 1, 1967 * * * and from year to year thereafter, unless this contract is terminated as provided herein.” The contract was not "terminated as provided herein” and therefore continued from year to year except as may appear from exhibits submitted. An examina *447 tion of the exhibits indicates that this contract apparently continued from year to year and continued after July 1, 1976 and until November, 1976 when certain changes were made.
By the letter dated September 30, 1974, defendant sought to eliminate its hospitalization coverage under the contract with the city when "No-fault Auto Insurance applies.” An issue is raised concerning the effectiveness of this letter, signed by Gruskin, which reduced the coverage under the hospitalization contract dated July 1, 1967 entered into between defendant and the city.
The power to enter into the hospitalization contract involved herein is granted to the city by subdivision 29 of section 20 of the General City Law. It provides that the city may contract "by its board of estimate” with a nonprofit membership corporation "for the purpose of furnishing medical and surgical services and hospital service”. While no question is raised concerning the authority of the city to enter into the hospital contract dated July 1, 1967, plaintiff takes the position that Gruskin had no authority to reduce the benefits available to the city’s employees under the hospitalization contract with defendant. Nothing has been presented to the court showing that the Board of Estimate authorized this amendment set forth in the letter signed by Gruskin. While subdivision 29 of section 20 of the General City Law authorizes "the department of personnel” of the city to administer the hospitalization contract, it does not permit this department or its chief administrator to reduce the coverage which the contract gave to the city’s employees. "It is fundamental, that those seeking to deal with a municipal corporation through its officials, must take great care to learn the nature and extent of their power and authority.” (McDonald v Mayor, Alderman & Commonalty of City of N. Y., 68 NY 23, 27; see, also, Pauk v Board of Higher Educ., 62 AD2d 660, 664; Miller v City of New York, 39 Misc 2d 424, mod on other grounds 20 AD2d 720, affd 15 NY2d 34.) Accordingly, since Gruskin did not have the power and authority to enter into a hospitalization contract with defendant, the letter he signed was ineffective and did not reduce the hospitalization benefits which plaintiff was entitled to receive.
Defendant points out, however, that on November 8, 1976, a properly authorized revised contract was entered into between the city and the defendant which provided that benefits were to be eliminated where no-fault benefits were *448 available. This revised, contract, signed by Mayor Beame, pursuant to authority granted by a resolution by the Board of Estimate adopted on March 4, 1976, apparently was properly authorized (although it is not entirely clear whether there was full compliance with the "Special Condition” set forth in appendix B). While that resolution does not refer specifically to the elimination of benefits where no-fault benefits are available, it did authorize the Mayor to enter into "a contract between the city and Blue Cross” at certain rates, and would appear to give the Mayor sufficient authority to enter into the contract to be signed which, among other things, included a modification of the prior contract whereby benefits covered by no-fault were eliminated. This revised contract covered the period from July 1, 1975 through June 30, 1976, and apparently renewed the existing contract of July 1, 1967, with various revisions. On November 30, 1976, the contract was further extended for a period from July 1, 1976 through December 31, 1976. (While this contract is signed by Mayor Beame, the authorization to enter into this contract is not entirely clear, although it may have been authorized by a resolution of the Board of Estimate of August 19, 1976.)
Defendant argues that the city had a right to make a contract with it "as of’ an earlier date and that plaintiff is either bound by the contract signed on November 8, 1976 eliminating benefits covered by no-fault "as of’ July 1, 1975, or that there is no contract at all under which she is entitled to any benefits.
The basic difficulty with defendant’s position is that, while it correctly points out that plaintiff is a third-party beneficiary of a contract it made with the city (Blue Cross of Northeastern N. Y. v Ayotte, 35 AD2d 258, 260), it then overlooks plaintiffs status as a third-party beneficiary in July, 1976. At that time, the contract of July 1, 1967, was in effect by virtue of the automatic renewal provision. This contract had been renewed from year to year in accordance with its terms. Indeed, by letter dated June 3, 1976, defendant recognized the annual renewal in the course of advising the city that while certain new benefits mandated by the Legislature did not have to be included until the renewal date, "unless we hear from you to the contrary, we will apply the new benefit to your group immediately instead of your group’s annual renewal date which is July 1, 1976.” Thus, even if the annual renewal provision were regarded as unclear, the "practical construe *449 tion” given to the contract by the parties for some nine years recognized that it was renewed annually. (Brooklyn Public Lib. v City of New York, 250 NY 495, 501.) Since Gruskin’s letter was ineffective to eliminate benefits covered by no-fault, the contract which renewed itself on July 1, 1976, was renewed without the no-fault change. While defendant and the city may have had the right to make changes in this contract (Blue Cross of Northeastern N. Y. v Ayotte, supra) and to eliminate duplication of coverage with respect to no-fault (Dudley v Blue Cross, 63 AD2d 813), they could not take away rights which had already vested in plaintiff. (Clifford v Corrigan, 117 NY 257, 263.) When plaintiff incurred the hospitalization expenses in July, 1976, plaintiff’s right to payment by defendant vested under the hospitalization contract which, by automatic renewal, continued in effect without the no-fault change. Defendant then became liable for payment, and subsequent changes in the contract could not take away that right which had already vested. See, also, Stein v Severino (41 Misc 2d 209, 211) stating: "Parties to a contract entered into for the benefit of a third person may rescind the contract as they see fit, without the assent of the third person at any time before the contract is accepted, adopted or acted upon by him and such rescission deprives the third person of any rights under or because of such contract (Moore v. Ryder, 65 N. Y. 438). However, after the third person accepts, adopts or acts upon the contract entered into for his benefit, the parties thereto cannot rescind the same without his consent, so as to deprive him of its benefits (Comley v. Dazian, 114 N. Y. 161).” Judgment for plaintiff against defendant for $836.

 While the court finds it unnecessary to consider this contention in view of the result reached, the court observes that even if there were a termination of benefits, the cited regulation is inapplicable since it did not become effective until November 23, 1976, having been issued pursuant to subdivision 11 of section 221 of the Insurance Law, which took effect on July 26, 1976.