EDGAR PAUK, Respondent, v BOARD OF HIGHER EDUCATION OF THE CITY OF NEW YORK, Appellant.

First Department, June 6, 1978

## APPEARANCES OF COUNSEL

*Ronald E. Sternberg (L. Kevin Sheridan* with him on the brief; *Allen G. Schwartz, Corporation Counsel),* for appellant.

*Frederick E. Sherman* of counsel *(Daniel J. Brooks* with him on the brief; *Layton & Sherman,* attorneys), for respondent.

## OPINION OF THE COURT

LUPIANO, J.

Petitioner was a member of the teaching staff of Queens College for nine years. Throughout that period he was employed on a year-to-year basis. He served the first three years (academic years 1967-1968, 1968-1969 and 1969-1970) as a lecturer. Reappointed for academic year 1970-1971, petitioner was subsequently upgraded to the position of assistant professor for that year upon receipt of his Ph.D. degree. His second year as assistant professor was during academic year 1971-1972. He was reappointed to that position for the following year. During the fall, 1971 semester he was granted a half-time schedule (reduced teaching load) so that he could participate in activities for the Legislative Conference, the former collective negotiating representative for part of the instructional staff at City University. The conference reimbursed the respondent Board of Higher Education for one half of the petitioner's salary during this semester. The following spring, 1972 semester, petitioner was granted a leave of absence without pay, authorized under article XI of the agreement between respondent and the Legislative Conference, to enable petitioner to engage in duties for the conference. Petitioner was assured that his leave of absence would not jeopardize his

increment credit toward salary increases nor his recommendation for retirement credit. During that semester petitioner, as a member of the Romance Languages Department at the college, voted on departmental and academic senate matters, but undertook no teaching duties.

Petitioner was reappointed to the position of assistant professor for the academic year 1972-1973. In a letter dated February 5, 1973 to petitioner, Dr. Reilly, Chairman of the Department of Romance Languages, indicated that although the absence during the previous year would not be considered as a break in the continuous service required for award of tenure, such absence would cause a delay of one year in the consideration for award of tenure. In other words, instead of becoming eligible for tenure with the fall, 1975 term, the absence during the 1971-1972 academic year would delay the procedure by one year so that petitioner would not be eligible for appointment with tenure until the fall, 1976 semester (with notice to be given on December 1, 1975, and preparation for consideration to commence during the spring semester, 1975). Petitioner was reappointed for the 1973-1974 academic year (a fourth year) and the 1974-1975 academic year (his fifth year) as assistant professor. Reappointed to his sixth year (academic year 1975-1976) as an assistant professor, petitioner was informed by the department chairman on September 24, 1975 that the Personnel and Budget Committee of the department had recommended petitioner for reappointment with tenure beginning 1976. However, on October 24, 1975, petitioner was informed by the college president that said committee had made a negative recommendation on tenure. After his administrative appeal was rejected and subsequent to notification that his appointment to the faculty would terminate August 31, 1976, petitioner initiated this article 78 proceeding.

■ Subdivision 3 of section 6206 of the Education Law provides in pertinent part as follows: "The permanent instructional staffs shall consist of: * * * b. All other persons employed on an annual salary basis of the educational units governed and administered by the board in the grades of * * * assistant professor * * * who, *after serving* on an annual salary in any of the grades or positions enumerated or provided *for in* this paragraph *for five full years continuously,* have been appointed or shall be appointed for a sixth full year, except as provided in subdivisions four and five of this

section; the membership of such persons on the permanent instructional staffs shall become effective on the first day of September following their reappointment for the sixth full year" (emphasis supplied).[1] The statute requires that an individual actually serve in the enumerated grade or position and the mere fact of appointment without such actual service does not comport with the self-evident intent of the statute. "Although statutory tenure systems vary from State to State and private tenure programs differ between private institutions, in all forms tenure encompasses *a basic continuity of service"* *(New York Inst. of Technology v State Div. of Human Rights,* 40 NY2d 316, 323; emphasis supplied). Although petitioner points out that during his leave of absence he continued to vote on faculty committees, conducted research and counseled students, it is conceded that he undertook no classroom duties. Reason and common sense dictate that qualification for tenure in a teaching position is based primarily on teaching time during the qualification period.

Regarding petitioner's argument that he was misled into believing his leave of absence year would be credited toward his earning of tenure, we note that respondent simply granted petitioner consideration of his leave of absence in computing salary increments and retirement credits. Petitioner fails to cite any statutory authority, any section of the respondent's by-laws or the negotiating agreement in support of his entitlement *to consideration of his leave of absence in determining* his eligibility for tenure. Despite the fact that the Education Law requires five consecutive years in the position before tenure can be awarded, petitioner was advised and, in effect, acknowledged that respondent would consider him for tenure after completion of five years of teaching service within a six-year period. Pertinently there is a statutory qualifying requirement for tenure that the person be appointed for a sixth year. Even though petitioner may have served five full years as an assistant professor within a six-year period, nevertheless at the end of his fifth full year of actual service as an assistant professor within that period, he was not reappointed for a sixth year. Thus, even assuming the validity of a commitment to ignore the requirement of five *continuous* full years by considering five full years of noncontinuous service within a six-year period, petitioner failed to meet the crucial

---

1. Section 6206 of the Education Law entitled "tenure" is contained in article 125 entitled "Board of Higher Education in The City of New York."

element requisite for tenure of appointment for a sixth full year.[2]

"[T]he exercise of 'academic judgment' alone governs the conferring of tenure. The statutes give the various boards of education, such as the respondent, the exclusive power to make the initial appointments and to determine whether an appointee is qualified academically so as to permit an appointee to continue long enough to obtain tenure" (*Legislative Conference of City Univ. of N. Y. v Board of Higher Educ. of City of N. Y.*, 38 AD2d 478, 480, affd 31 NY2d 926). This power must be exercised by respondent (the Board of Higher Education in the City of New York) in conformance with the statutory mandate applicable to it (article 125 of the Education Law). Therefore, even assuming that officials of the college erred in permitting petitioner to exercise certain faculty privileges while on leave status or that the Chairman of the Romance Languages Department represented to petitioner respecting tenure that the requirement of continuous five full years of service in the grade of assistant professor mandated by the statute would be waived, petitioner's leave status was not thereby changed. Clearly, no official of the college had the power to alter the explicit statutory requirements for tenure. "A long, impressive line of cases beginning with *McDonald v. Mayor* (68 N.Y. 23) has firmly established as fundamental the principle that one dealing with a municipality through its officials must take great care to learn the true nature and extent of their power and authority. One relies on the self-asserted, naked representation of an official's power and authority to bind the municipality at one's peril. It is recognized that this principle has worked hardship in the past and may in the future, but it is a rule of necessity that moral obligations alone cannot bind the municipality since 'no legal obliga-

---

2. It is noted that section 6206 (subd 3, par b) of the Education Law provides that "[w]here the service of a member of the instructional staff, in one of the titles listed * * * is interrupted by reason of absence on a maternity or child care leave duly granted by the board, the period of creditable service immediately preceding such absence shall be counted in computing the five full years of service required by this subdivision." This benefit is not provided for interruptions occasioned by reason of leave of absence for any other purpose. Since the statute addresses itself to the issue of when a specific leave of absence does not militate against the period of service preceding such absence being utilized in computing the five full years of service, the silence of such statute to address leaves of absence for other than specified reasons clearly implies a legislative intent that the nonspecified leaves of absence interrupt the continuous service and inhibit the inclusion of service immediately prior to the leave in the computation of the five full years of service.

tion arose.' *(Seif v. City of Long Beach,* 286 N.Y. 382, 389; 40 N.Y. Jur., Municipal Corporations, §§ 822, 825.)" *(Steiner Egg Noodle Co. v City of New York,* 63 Misc 2d 163, 165-166, affd 34 AD2d 892; see, also, *Prosper Contr. Corp. v Boad of Educ. of City of N. Y.,* 73 Misc 2d 280, affd 43 AD2d 823.)

To reiterate, the instant proceeding involves a challenge to the denial of tenure. "The management of the university is primarily the responsibility of those equipped with the special skills and sensitivities necessary for so delicate a task. One of the most sensitive functions of the university administration is the appointment, promotion and retention of the faculty. It is for this reason that the courts, and administrative agencies as well, should 'only rarely assume academic oversight, except with the greatest caution and restraint, in such sensitive areas as faculty appointment, promotion, and tenure, especially in institutions of higher learning.' *(Matter of Pace Coll. v Commission of Human Rights of City of N. Y.,* 38 NY2d 28, 38; see, also, *Faro v New York Univ.,* 502 F2d 1229, 1231-1232.)" *(New York Inst. of Technology v State Div. of Human Rights,* 40 NY2d 316, 322, *supra.)* The record is devoid of any act on the part of respondent to mislead petitioner into believing that he would be credited for tenure consideration with the period of his leave of absence.

Petitioner's employment as a lecturer for the three years from 1967-1970 does not entitle him to tenure on the permanent instructional staff within the meaning of section 6206 of the Education Law. Article 13.1 of the 1969 bargaining agreement between respondent and the United Federation of College Teachers provides for the elgibility of full-time lecturers for tenure by the granting of a "certificate of continuous employment" in accordance with article 25. Article 25.1 requires five or more continuous full-time appointments in the title of lecturer "prior to September 1, 1969." Petitioner became a lecturer in the fall of 1967; therefore, he was not eligible as of September 1, 1969 to be "grandfathered in," that is, to obtain tenure in the title of "lecturer." As articles 13 and 25 refer only to the title "Lecturer," petitioner cannot avail himself of such articles regarding the tenure which he maintains he is entitled to in the grade of assistant professor. It further appears that in January, 1973 respondent's by-laws were amended. Section 6.5 of these by-laws, entitled "Appointments Without Tenure" provides in relevant part: "Nothing contained in this article shall be construed as conferring or

permitting tenure or service credit toward the achievement of tenure in the positions of * * * adjunct lecturer * * * lecturer (full-time), lecturer (part-time) * * * except that prior service as a full-time lecturer or lecturer (full-time) *may be considered* toward the award of tenure to persons in a title on the permanent instructional staff" (emphasis supplied). Petitioner's reliance on articles 1.2 and 1.3 of the 1969 bargaining agreement and articles 2.2 and 2.4(a) of the 1972 bargaining agreement to the effect that the stated terms of the agreements will prevail where there is any inconsistency between the by-laws and the agreements, is of no avail because the tenure which petitioner claims he is entitled to is tenure in a grade on the permanent instructional staff (Education Law, § 6206) and not tenure in the title "Lecturer."

■ Respondent has the power in its discretion to add any grade or position to the grades enumerated in the statute as comprising the permanent instructional staff (Education Law, § 6206, subd 3, par b). However, while respondent may have permitted tenure to be obtained in the title "Lecturer," securing job security to those in such title, it appears that respondent has not added such title to the grades or positions on the permanent instructional staff within the ambit of section 6206 of the Education Law which would confer on such title the full statutory tenure. Even assuming that respondent had added the title of "Lecturer" to the grades comprising the permanent instructional staff, petitioner would not be entitled to the tenure he seeks. As already observed, the statute specifically directs as an objective criterion for tenure the serving of five full years *continuously* with appointment (actual or anticipated) to a sixth full year. Petitioner served four continuous years as a lecturer and assistant professor from 1967-1968 through 1970-1971, but for the academic year 1971-1972 he interrupted this continuity by reason of leave of absence. Subsequently, he served four years continuously as an assistant professor (1972-1973 through 1975-1976), but was not reappointed for the 1976-1977 academic year. Having failed to meet the continuous service requirement of the statute, petitioner is not entitled to tenure on the permanent instructional staff. The result is the same, even if under by-law section 6.5 we mandate that on this record the equities so preponderate in favor of petitioner that as a matter of law respondent exercised its discretionary power to credit petitioner on a one-to-one ratio with his years of service as a lecturer in computing eligibility for tenure as an assistant

professor on the permanent instructional staff. "Tenure as defined under the Education Law and the by-laws of the Board has been held to be 'in derogation of the common-law right of contract on the part of public authorities in engaging public servants of this character, and should be strictly construed' *(Matter of O'Connor v. Emerson,* 196 App. Div. 807, 813)" *(Matter of Rosen v Board of Higher Educ. of City of N. Y.,* 27 AD2d 80, 82, affd 19 NY2d 970). Although sympathetic to the plight of petitioner, we cannot, in view of the mandated strict construction of the statute and the well-recognized principles of law enunciated above, substitute our judgment for that of respondent where respondent's action accords with the applicable provisions of law.

Accordingly, the judgment of the Supreme Court, New York County (NUSBAUM, J.), entered September 28, 1977, which granted the petition to the extent of, *inter alia,* declaring that petitioner is a member of the permanent instructional staff of Queens College of the City University of New York and reinstating him to the tenured position of assistant professor, should be reversed, on the law, without costs and disbursements, and the petition dismissed.

KUPFERMAN, J. P., BIRNS, EVANS and SULLIVAN, JJ., concur.

Judgment, Supreme Court, New York County, entered on September 28, 1977, unanimously reversed, on the law, without costs and without disbursements, and vacated, and the petition dismissed.