**Edgar PAUK, Plaintiff-Appellant,**

v.

**The BOARD OF TRUSTEES OF the CITY UNIVERSITY OF NEW YORK, et al., Defendants-Appellees.**

**No. 877, Docket 80–9018.**

United States Court of Appeals, Second Circuit.

Argued April 6, 1981.

Decided July 22, 1981.

Rehearing and Rehearing In Banc Denied September 11, 1981.

---

Jonathan A. Weiss, New York City (Oscar Chase and Edgar Pauk, New York City, on the brief), for plaintiff-appellant.

Edward F.X. Hart, New York City (Allen G. Schwartz, Corp. Counsel, and Ronald E. Sternberg, New York City, on the brief), for defendants-appellees.

Before TIMBERS and NEWMAN, Circuit Judges, and SOFAER *, District Judge.

* The Honorable Abraham D. Sofaer of the United States District Court for the Southern District of New York, sitting by designation.

1. Though Pauk was appointed to the faculty for six years prior to the action on his tenure, in 1971–1972 he was on leave of absence without pay from all of his teaching responsibilities in order to work for the faculty union. The New York courts held that the tenure statute, N.Y.

NEWMAN, Circuit Judge:

This appeal concerns the recurring issue of determining the appropriate statute of limitations under New York law for actions commenced under 42 U.S.C. § 1983 (1976). The District Court for the Eastern District of New York (Jacob Mishler, Judge), applying New York's three-year limitations period for liability created or imposed by statute, N.Y.Civ.Prac.Law and Rules (CPLR) § 214(2) (McKinney 1972), dismissed appellant's claim as time barred. We affirm, concluding that § 214(2) is the New York limitations provision that best fulfills the federal policies underlying § 1983 actions.

Appellant Edgar Pauk became an Assistant Professor in the Department of Romance Languages of Queens College of the City University of New York in the Fall of 1970 after serving as a Lecturer for the three preceding years. Under New York law, tenure is automatically conferred within the City University when an individual has served full-time as an Assistant Professor for five continuous years and is reappointed for a sixth consecutive year. N.Y. Educ.Law § 6212(3) (McKinney Supp. 1980) (formerly N.Y.Educ.Law § 6206(3)). On September 24, 1975, after five years of full-time service,[1] Pauk was informed by his Department that it had voted to recommend him for reappointment with tenure and was submitting its recommendation to the College Personnel and Budget Committee. However, on October 24, 1975, Pauk was notified by the President of the College that the Committee had voted against his reappointment.

In this letter, the President indicated that he would entertain an appeal of the Committee's determination based on either in-

Educ.Law § 6206(3) (now § 6212(3)), required five years of full-time *service*, not simply appointment, as a teacher and consequently that Pauk had not already acquired tenure by having been reappointed to a sixth year. *Pauk v. Board of Higher Education*, 62 A.D.2d 660, 406 N.Y.S.2d 46 (1st Dep't 1978), *aff'd*, 48 N.Y.2d 930, 425 N.Y.S.2d 92, 401 N.E.2d 214 (1979).

formation that had been unavailable to the Committee, or credible allegations that the Committee had considered non-academic matters. Pauk appealed, outlining his academic credentials, and alleging that he had been denied reappointment because of his union activities. On November 14, 1975, the President denied Pauk's appeal, and shortly thereafter, on November 24, 1975, Pauk was notified by the Provost that his appointment terminated on the final day of his existing one-year contract, August 31, 1976. Pauk's tenure application was not considered by the University Board of Trustees because it was the Board's practice to act on tenure matters only when positive tenure recommendations were made.

On January 7, 1976, Pauk challenged the denial of his reappointment by filing a grievance in accordance with the collective bargaining agreement between the Board of Higher Education (now the Board of Trustees of the City University of New York) and the faculty union, the Professional Staff Congress. Under this agreement, grievances were submitted to an arbitrator empowered to rule only whether the challenged decision was procedurally defective. If the arbitrator so ruled, the matter was referred to a select faculty committee to reconsider the decision and make a recommendation to the Board. Rather than pursue this path, Pauk withdrew his grievance one month after filing it. In the interim, he commenced an Article 78 proceeding in New York state court, CPLR § 7801, et seq. (McKinney 1981), alleging that his dismissal was improper since he had in fact obtained tenure, counting either the three years in which he taught in the capacity of a lecturer, or the one year during which he was on leave of absence without pay from any teaching duties. This petition was ultimately rejected by the New York Court of Appeals in 1979. *Pauk v. Board of Higher Education,* 48 N.Y.2d 930, 425 N.Y.S.2d 92, 401 N.E.2d 214 (1979), *aff'g* 62 A.D.2d 660, 406 N.Y.S.2d 46 (1st Dep't 1978). On Au-

gust 31, 1979, three years after the termination of his employment contract, and three years and nine months after notification of both the tenure denial and his discharge date, Pauk filed this action under 42 U.S.C. § 1983, alleging that the College and City education officials had deprived him of First Amendment rights by denying him reappointment with tenure in retaliation for his active participation in the faculty union.

The District Court granted appellees' motion to dismiss the complaint on the ground that Pauk's action was time barred. The Court determined that Pauk's claim had accrued in November 1975 when he received notification of the tenure denial and his discharge date. The Court then applied the three-year limitations period of CPLR § 214(2) for liability created or imposed by statute. We agree with both conclusions of the District Court.

*Accrual*

Federal law determines when a claim accrues under § 1983. *Singleton v. City of New York,* 632 F.2d 185, 191 (2d Cir. 1980), *cert. denied,* 450 U.S. 920, 101 S.Ct. 1368, 67 L.Ed.2d 347 (1981). In *Singleton,* following the Fourth Circuit's approach in *Bireline v. Seagondollar,* 567 F.2d 260, 263 (4th Cir. 1977), *cert. denied,* 444 U.S. 842, 100 S.Ct. 83, 62 L.Ed.2d 54 (1979), we held that the federal claim accrues when the plaintiff "knows or has reason to know" of the injury that is the basis of his action. 632 F.2d at 191. Pauk knew of his injury, the alleged improper denial of tenure, on November 24, 1975, when he received notice of termination of his employment from the Provost following the President's denial of his appeal. He contends, however, that his right of action did not accrue until August 31, 1976, the date of his actual discharge, because the letters he received in November did not represent final action on his tenure application, action that he alleges could be taken only by the Board of Trustees of the University.[2]

2. We reject Pauk's theory that no "deprivation" occurred under § 1983 until his employment actually terminated. The alleged depriva-

tion violating Pauk's constitutional rights was not the fact of his discharge but the denial of

In *Delaware State College v. Ricks*, 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980), the Supreme Court held that the date of accrual of a claim alleging that the plaintiff was denied tenure because of his national origin in violation of 42 U.S.C. § 1981 (1976) and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (1976), was the date on which the plaintiff had received notice of the negative tenure decision and not the date of his actual termination. Appellant seeks to distinguish *Ricks* on factual grounds, contending that, unlike the circumstances of this case, there was clear evidence of the decision's finality in *Ricks* because the Board of Trustees of Delaware State College had both reviewed the faculty tenure decision and sent the notification letter to Ricks.[3]

The gist of appellant's claim is that under New York law the Board of Trustees cannot delegate its decisional authority with respect to academic matters such as tenure, and that the negative tenure determination by the College Committee and the President therefore lacked binding authority without the Board's approval. Pauk maintains that since these decisions were not "final," his claim did not accrue until his actual discharge, when he no longer qualified under the tenure statute's continuous full-time service requirement. We disagree.

■ New York courts have held that the Board has a "nondelegable duty" to decide

faculty appointments, promotion, and tenure. *Rodriguez-Abad v. Kibee*, 71 A.D.2d 588, 418 N.Y.S.2d 430 (1st Dep't 1979); *Aptekar v. Board of Higher Education*, 66 A.D.2d 630, 414 N.Y.S.2d 156 (1st Dep't 1979); *Legislative Conference of City University v. Board of Higher Education*, 38 A.D.2d 478, 330 N.Y.S.2d 688 (1st Dep't), *aff'd*, 31 N.Y.2d 926, 340 N.Y.S.2d 924, 293 N.E.2d 92 (1972); *see Professional Staff Congress/CUNY v. City University of New York*, 507 F.Supp. 637 (S.D.N.Y.1981). But the context of these rulings is quite distinct: at issue was the Board's ability to *reject* a faculty committee's positive recommendation of tenure. The courts uniformly concluded that the committee recommendations did not bind the Board because the Board's authority to *grant* tenure was not delegable. In *Rodriguez-Abad*, the Appellate Division further held that when a select committee established in accordance with the collective bargaining agreement's arbitration procedures voted to recommend an individual for tenure, the President could not veto that determination on his own but had to pass the recommendation on to the Board for its review. We do not find in these rulings a requirement that the Board independently review all negative tenure decisions. The Board's only nondelegable duty concerning tenure under New York law is to review recommendations for tenure supported throughout the adminis-

reappointment with tenure, allegedly based on Pauk's protected First Amendment conduct.

3. Appellant also contends that *Ricks* is inapplicable because of the difference in the federal statutes on which the claims rest, citing this Court's statement in *Singleton v. City of New York*, 632 F.2d 185, 191 n.5 (2d Cir. 1980), *cert. denied*, 450 U.S. 920, 101 S.Ct. 1368, 67 L.Ed.2d 347 (1981), that in a single § 1983 action relying on several claims for relief, the individual claims need not all accrue on the same date. We disagree with appellant as to the import of our remark in *Singleton*; we simply expressed the common sense view that accrual dates for different *types* of claims may vary, and did not suggest that the federal rule for determining when a particular type of claim accrues should vary according to the federal statute under which it is brought. We think it appropriate to follow the Supreme Court's approach to the time of accrual of a claim involv-

ing a denial of tenure under 42 U.S.C. § 1981 (1976) in this action brought under 42 U.S.C. § 1983 (1976). *Cf. Bratton v. Bethlehem Steel Corp.*, 649 F.2d 658 (9th Cir. 1980) (same rationale for choosing statute of limitations under § 1983 applies to § 1981); *Marshall v. Electric Hose & Rubber Co.*, 68 F.R.D. 287, 293 (D.Del. 1975) (same).

Nor is appellant's claim aided by *Fernandez v. Chardon*, 648 F.2d 765 (1st Cir. 1981). *Fernandez* held that a § 1983 claim for wrongful discharge from government employment accrued at the time of discharge, rather than receipt of notice of the discharge decision. Whether or not we would agree with *Fernandez* in the context of a discharge from non-academic government employment, we note that *Fernandez* distinguished *Ricks* on the ground that Ricks, like Pauk, was alleging an unlawful denial of tenure, not a discharge.

trative process or committee recommendations following a properly filed grievance even if disapproved during the administrative process.

■ There was no occasion for Board review of the denial of Pauk's tenure because the administrative process did not result in a favorable recommendation and Pauk withdrew from the grievance procedure which the New York courts have found to require ultimate Board review. Since appellant chose not to pursue the grievance procedure, the letters of notification he received from the President and Provost constituted final university action rejecting his tenure application. Pauk's discharge following receipt of those letters was simply the "inevitable consequence" of the adverse tenure decision previously made by the College just like the plaintiff's discharge following the trustees' notification letter in *Ricks.* 449 U.S. at 255, 101 S.Ct. at 503. We see no basis for distinguishing appellant's case from *Ricks.* Since the Board did not delegate any duty in this case, we affirm the District Judge's ruling that appellant's federal claim accrued as of November 24, 1975, the date he received final notice of his discharge.

*Statute of Limitations*

■ Because Congress has not provided a federal statute of limitations for actions brought under § 1983, we must apply the most appropriate state statute of limitations. *Board of Regents v. Tomanio,* 446 U.S. 478, 100 S.Ct. 1790, 64 L.Ed.2d 440 (1980); *Johnson v. Railway Express Agency, Inc.,* 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975). We have previously held that the appropriate statute of limitations for § 1983 actions brought in New York is CPLR § 214(2), which specifies a three-year limitations period for actions to recover upon a liability created or imposed by statute. *E. g., Singleton v. City of New York, supra,* 632 F.2d at 190; *Taylor v. Mayone,* 626 F.2d 247, 253 (2d Cir. 1980); *Quinn v. Syracuse Model Neighborhood Corp.,* 613 F.2d 438, 449 (2d Cir. 1980); *Meyer v. Frank,* 550 F.2d 726, 728 (2d Cir.), *cert.*

*denied,* 434 U.S. 830, 98 S.Ct. 112, 54 L.Ed.2d 90 (1977). Appellant asks us to abandon these holdings in light of the Supreme Court's decision in *Chapman v. Houston Welfare Rights Organization,* 441 U.S. 600, 618, 99 S.Ct. 1905, 1916, 60 L.Ed.2d 508 (1979), which held that § 1983 does not create any substantive rights and is only a remedial statute. Since § 214(2) does not apply to actions founded upon statutes that *provide only additional remedies and do not create or impose new obligations, State v. Cortelle Corp.,* 38 N.Y.2d 83, 85–86, 378 N.Y.S.2d 654, 655–56, 341 N.E.2d 223 (1975), the continued application of § 214(2) to § 1983 actions after *Chapman* must be reexamined, as we have previously recognized. *See Singleton v. City of New York, supra,* 632 F.2d at 190; *Taylor v. Mayone, supra,* 626 F.2d at 251 n.4; *Quinn v. Syracuse Model Neighborhood Corp., supra,* 613 F.2d at 449 n.6.

■ The issue is squarely presented in this case because, unlike the claims of the, plaintiffs in *Taylor* and *Quinn,* Pauk's claim is untimely if § 214(2) applies. And, unlike the plaintiff in *Singleton,* Pauk specifically urges rejection of § 214(2) in favor of the longer six-year limitations period provided by either CPLR § 213(2) (McKinney 1972), applicable to contract actions, or § 213(1), New York's residual statute of limitations. Appellees agree with Pauk that we should abandon application of § 214(2) in light of *Chapman,* but urge a much shorter limitations period, either the one-year-and-ninety-day limitations period for actions against a city or its employees, N.Y.Gen.Mun.Law §§ 50–i, 50–k(6) (McKinney 1977 & Supp. 1980), or the four-month limitations period for Article 78 actions, CPLR § 217 (McKinney 1972). We agree with Judge Mishler that, even after *Chapman,* § 214(2) is the most appropriate New York statute of limitations for § 1983 actions.

In reexamining the continued applicability of § 214(2) to § 1983 actions, we confront two realities: the body of our prior case law that has rejected limitations periods shorter than the three years specified by § 214(2) and the inexact fit of any of New York's

statutes of limitations to § 1983 actions. Application of the one-year-and-ninety-day period of § 50–i of the General Municipal Law was specifically rejected in *Taylor v. Mayone, supra,* and *Quinn v. Syracuse Model Neighborhood Corp., supra.* Admittedly, these decisions rejected § 50–i in favor of possibilities that included § 214(2), whose applicability is now in issue, but they retain significance nonetheless. Both *Taylor* and *Quinn* acknowledged the possible impact of *Chapman* and *Cortelle* upon § 214(2) and rejected § 50–i in favor of *either* § 214(2) *or* § 213(1), the six-year residual statute of limitations. Selection between these statutes was not necessary since the claims were timely under even the three-year statute. Nevertheless, the force of the rejection of a shorter limitations period remains, a result that seems to have been tacitly influenced by concern that a relatively short limitations period would not be consistent with the broad remedial purposes of § 1983. *See Shouse v. Pierce County,* 559 F.2d 1142, 1146 (9th Cir. 1977) (*per curiam* ). *Taylor* and *Quinn* are additionally pertinent in their disapproval of selecting different limitations periods for different classes of defendants. The interest in attaining some uniformity, at least within one state, concerning the limitations period for § 1983 actions has been widely noted. *See Walden, III, Inc. v. Rhode Island,* 576 F.2d 945, 947 (1st Cir. 1978); *Beard v. Robinson,* 563 F.2d 331, 337 (7th Cir. 1977), *cert. denied,* 438 U.S. 907, 98 S.Ct. 3125, 57 L.Ed.2d 1149 (1978); *Smith v. Cremins,* 308 F.2d 187, 190 (9th Cir. 1962); Note, *Statutes of Limitations in Federal Civil Rights Litigation,* 1976 Ariz.St.L.J. 97 (1976).

■ Even if we were to consider the applicability of § 50–i as an original question, we would be reluctant to select it for § 1983 actions. Section 50–i applies to suits "for personal injury or damage to real or personal property" caused by the negligence or wrongful acts of a city or its employees. The quoted terms fit precisely actions seeking redress for injuries of the sort that result from common law torts. A § 1983 suit, remedying what is sometimes called a constitutional tort, affords redress for "a

deprivation . . . significantly different from and more serious than . . . a state tort." *Monroe v. Pape,* 365 U.S. 167, 196, 81 S.Ct. 473, 488, 5 L.Ed.2d 492 (1961) (Harlan, J., concurring). Moreover, § 50–i represents a New York policy to provide more restrictive remedies against municipal employees for their torts than are available against private citizens, for whom the limitations period for unintentional torts is three years. CPLR § 214(5) (McKinney 1972). It would be anomalous for a federal court to apply a state policy restricting remedies against public officials to a federal statute that is designed to augment remedies against those officials, especially a federal statute that affords remedies for the protection of constitutional rights. Finally, the brevity of the period prescribed by § 50–i is of doubtful compatability with the purposes of § 1983. A federal court, searching for an analogous state limitations period for a § 1983 suit, should not select any period shorter than the two years Congress has specified as the time within which notice must be given of claims against the United States for unlawful actions by federal law enforcement officers. 28 U.S.C. §§ 1346(b), 2680(h) (1976). That expression of federal policy should establish a floor for the limitations period of § 1983 suits, so many of which concern similar conduct by state law enforcement officers. *Cf. Regan v. Sullivan,* 557 F.2d 300 (2d Cir. 1977), adopting three-year period of CPLR § 214(2) or six-year period of CPLR § 213(1) to suits against federal law enforcement officers brought pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

The same considerations that render § 50–i inappropriate as the limitations period for § 1983 actions also apply to appellees' suggestion that we should adopt the one-year-and-ninety-day period provided by § 50–k(6) for actions against certain employees of New York City. In enacting § 50–k(6) the New York legislature explicitly purported to apply the one-year-and-ninety-day limitations period to § 1983

suits, as well as all suits brought pursuant to 42 U.S.C. §§ 1981–1988 against the designated class of New York City employees. But, as appellant points out, § 50–k(6), as enacted, did not apply to employees of a board of education, § 50–k(1)(a) and (e), and although § 50–k(6) was purportedly amended to cover New York City educational employees by an amendment to Education Law § 6211, ch. 673, § 11, Laws of 1979, that amendment was ineffective, having occurred after § 6211 had been repealed by ch. 305, Laws of 1979. Moreover, the inappropriateness of adopting different limitations periods for different classes of defendants in § 1983 suits makes it highly undesirable to select different limitations periods for defendants occupying similar positions in different cities within a single state.

■ Appellees also suggest that the appropriate limitations period is the four months provided by CPLR § 217 for proceedings brought pursuant to Article 78 of the CPLR. The brevity of that period makes it singularly inappropriate for § 1983 actions. Moreover, even if an Article 78 proceeding is available for appellant's constitutional challenge to the denial of his tenure, there is no reason to believe that New York regards this procedure as the exclusive means for pursuing such a claim. Article 78 proceedings, though frequently brought, retain their basic nature as the modern procedural device for obtaining relief previously sought by specialized writs of certiorari for review, mandamus, or prohibition. CPLR § 7801 (McKinney 1981). Such writs are not analogous to § 1983 actions.

■ Appellant not only opposes appellees' suggestions but urges a limitations period longer than the three years provided by § 214(2). He contends that the appropriate period is the six years provided by either § 213(2), applicable to contract actions, or § 213(1), the residual statute of limitations. The argument for § 213(2) proceeds from appellant's contention that his contract with the Board of Education includes all rights conferred by New York law, which requires promotions in the civil service to be made according to merit, N.Y. Const., art. V, § 6, and that denial of tenure because of his exercise of First Amendment rights was unrelated to merit and therefore breached his contract. But appellant is not suing for breach of contract; he is suing under § 1983 for the constitutional tort alleged to have occurred when his tenure application was rejected in violation of his First Amendment rights. Under New York law, when a contract simply incorporates preexisting obligations independent of the contract, the applicable statute of limitations is not the period for contract actions but the period appropriate to the nature of the cause of action. *Union Bank of Switzerland v. HS Equities, Inc.*, 423 F.Supp. 927 (S.D.N.Y.1976); *see Blessington v. McCrory Stores Corp.*, 305 N.Y. 140, 147–48, 111 N.E.2d 421 (1953). The Supreme Court recently declined to apply § 213(2) to a New York suit nominally brought for breach of a collective bargaining agreement because the essence of the claim was an attempt to set aside an arbitration award. *United Parcel Service, Inc. v. Mitchell*, —— U.S. ——, 101 S.Ct. 1559, 67 L.Ed.2d 732 (1981). The Court therefore applied the ninety-day limitations period applicable to a claim of that type, CPLR § 7511(a) (McKinney 1980). For these reasons § 213(2) does not apply to appellant's suit.

Appellant's argument for application of § 213(1), the residual limitations period, rests on the assumption that we will no longer apply § 214(2) and the apprehension that we will not accept his argument for § 213(2). Appellees, sharing appellant's view that § 214(2) no longer applies, urge us to reject § 213(1) as well. In *Singleton v. City of New York, supra*, we observed that § 213(1), though phrased as applying to "an action for which no limitation period is specifically prescribed by law," has generally been understood to govern only actions for equitable relief. *Id.* at 190.[4] We have also

4. *Singleton* may have overemphasized the significance of the materials relied on for this conclusion. First, the opinion noted that the Practice Commentaries to § 213(1) state that the

declined to apply the residual limitations period to a suit seeking an equitable remedy when an action at law was available. *Swan v. Board of Higher Education*, 319 F.2d 56, 60 (2d Cir. 1963); *cf. Romer v. Leary*, 425 F.2d 186 (2d Cir. 1970); *see also Williams v. Walsh*, 558 F.2d 667 (2d Cir. 1977). Appellant, in addition to seeking reinstatement, has presented claims for back pay, compensatory damages, and punitive damages. Notwithstanding the legal nature of at least some of his claims, appellant urges the application of § 213(1) for two reasons. First, he questions *Singleton's* limitation of § 213(1) to equitable actions, pointing out that the statute has at least once been applied to an action at law. *Clark v. Water Commissioners*, 148 N.Y. 1, 42 N.E. 414 (1895) (predecessor of § 213(1) applied to action for compensation for taking of property). Second, he urges that § 213(1) applies even when a legal claim is available as long as the equitable claim being pursued is not in aid of the legal claim. *See Russell v. Todd*, 309 U.S. 280, 60 S.Ct. 527, 84 L.Ed. 754 (1940); 1 J. Weinstein, H. Korn & A. Miller, *New York Civil Practice* ¶ 213.01 (1977). The substantiality of the issues raised by both sides concerning the applicability of § 213(1) suggests that before resolving them we should first more closely examine the premise on which both sides have proceeded: that the limitations period of § 214(2), applicable to claims founded on a statute, is no longer appropriate for § 1983 suits.

■ Even after *Chapman* and *Cortelle*, there remains room for argument that § 1983 is a statute within the category described by § 214(2). The argument requires examination of both *Cortelle* and the function of § 1983. *Cortelle* declined to apply § 214(2) to an action brought by the Attorney General of New York, pursuant to § 1101(a)(2) of the Business Corporation Law (McKinney 1963) and § 63(12) of the Executive Law (McKinney 1972), to enjoin fraudulent practices of corporations and their officers. The Court of Appeals noted that the statutes authorizing the Attorney General to sue did not make the defendants' practices unlawful and that statutes providing "only additional remedies or standing" are not statutes that create or impose liabilities within the meaning of § 214(2). 38 N.Y.2d at 85, 378 N.Y.S.2d at 655, 341 N.E.2d at 224. Section 1983 is plainly not a statute that makes anyone's conduct unlawful, but neither is it a statute that provides only "additional" remedies for well-established liabilities. In the absence of § 1983, those who transgress constitutional commands would be liable for damages only on the basis of an implied cause of action grounded directly on the Constitution. While such liability has been recognized, *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) (Fourth Amendment); *Turpin v. Mailet*, 579 F.2d 152 (2d Cir.) (*en banc*) (Fourth Amendment liability of municipality), *vacated and remanded for reconsideration sub nom. City of West Haven v. Turpin*, 439 U.S. 974, 99 S.Ct. 554, 58 L.Ed.2d 645 (1978); *Paton v. LePrade*, 524 F.2d 862, 869–70 (3d Cir. 1975) (First Amendment), it surely is not as "old and common" as the liability for fraud that predated the statutes authorizing the state Attorney General's suit in *Cortelle*. 38 N.Y.2d at 86, 378 N.Y.S.2d at 657, 341 N.E.2d at 226. Section 1983 can hardly be said to supply an "additional" remedy when, for the 100 years after its enactment

residual six-year period "governs actions in equity." 632 F.2d at 190. That view is not inconsistent with the applicability of § 213(1) to at least some actions at law, unless it is assumed that every action at law is governed by one of the specific statutes of limitations. *But see Clark v. Water Commissioners*, 148 N.Y. 1, 42 N.E. 414 (1895). Second, the opinion cited legislative history stating that § 213(1) is applicable to " 'such equity actions as an action to reform an instrument, or any other action

where no period is expressly prescribed.' " 632 F.2d at 190 n.4, *quoting* Leg.Doc. Vol. 1, No. 13, 181st Sess. at 67 (1958). The reference to "any other action" may well include some actions at law, rather than mean only other equity actions. Such is the view of at least one group of commentators. 1 J. Weinstein, H. Korn & A. Miller, *New York Civil Practice* ¶ 213.01 (1977) ("Aside from its use as the 'residual' provision, CPLR 213(1) is applied in actions in which equitable relief is sought.").

in 1871 until *Bivens* was decided in 1971, it was the only means recognized for imposing damage liability specifically for violations of the Constitution. Moreover, when § 1983 provides a remedy, an implied cause of action grounded on the Constitution is not available. *Turpin v. Mailet*, 591 F.2d 426 (2d Cir. 1979) (*en banc*) (rejecting cause of action against municipality grounded directly on Constitution because of availability of § 1983 after *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)). In light of the primacy of § 1983 in providing the basis for securing redress for constitutional violations, we cannot be certain that the New York Court of Appeals would decline to view it as a statute within the category to which § 214(2) applies.

Alternatively, it is possible to apply § 214(2) directly to § 1983 claims, as Judge Mishler did, on the rationale that the United States Constitution, on which appellant's claim is founded, should be considered a statute for purposes of § 214(2). Other courts have adopted this rationale in applying local versions of § 214(2) to suits based on constitutional claims. *De Malherbe v. International Union of Elevator Constructors*, 449 F.Supp. 1335, 1350 (N.D.Cal.1978) (U.S. Constitution); *Santa Cruz County v. McKnight*, 20 Ariz. 103, 111, 177 P. 256, 259 (1918) (Arizona Constitution). Moreover, in *Regan v. Sullivan, supra,* we identified § 214(2) as one of two statutes of limitations ·(along with § 213(1)) that might be applicable to claims founded directly on the Constitution pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, supra*.

Arguably opposed to this construction is *Clark v. Water Commissioners, supra,* in

which the New York Court of Appeals ruled that the predecessor of § 214(2) was inapplicable to a claim for compensation for a public taking of property. However, *Clark* appears to involve a claim based on the state constitution.[5] More pertinent is a recent decision of the Appellate Division explicitly ruling that, in light of *Chapman* and *Cortelle*, § 214(2) does not apply to a § 1983 claim brought in state court against a municipality and its police officers. *Staffen v. City of Rochester*, 80 A.D.2d 16, 437 N.Y.S.2d 821 (4th Dep't 1981). *Staffen* applied the one-year-and-ninety-day period of § 50–i of the General Municipal Law, a result we had rejected in *Quinn*. The Appellate Division was not asked to determine whether § 214(2) should apply to § 1983 claims on Judge Mishler's rationale that the United States Constitution can be considered a statute within the meaning of § 214(2).

From this state of the decisional law a conclusion is not easily drawn. What must be kept in mind is the nature of our task as distinguished from that of the state courts. The courts of New York provide authoritative guidance on the proper construction of state statutes, including statutes of limitations. But determination of an appropriate state limitations period applicable to a federal cause of action is "a matter of federal law." *UAW v. Hoosier Cardinal Corp.*, 383 U.S. 696, 705, 86 S.Ct. 1107, 1113, 16 L.Ed.2d 192 (1966). We would not be applying federal law if we automatically deferred to New York's view, whether expressed by its courts or its legislature, as to which limitations period the state thought was appropriate for a § 1983

---

**5.** The pertinence of *Clark* to § 1983 claims is rendered doubtful by comparing the nature of the statute at issue in *Clark* and the nature of § 1983. The statute under which the plaintiff sued in *Clark* in no sense created or imposed a liability. It merely established the procedural steps for obtaining compensation in the special context of condemnation authority exercised by the village of Amsterdam. N.Y.Laws of 1881, ch. 101. The statute extended to the village the condemning power normally exer-

cised by the State. Well-established prior law, as traditional as the liability for fraud that preceded the additional statutory remedy in *Cortelle*, assured the plaintiff in *Clark* his right to secure just compensation for any public taking of his property. Section 1983, as discussed in the text, *supra*, though not creating a right, has far more significance in providing the fundamental basis for damage liability than the statute under which suit was brought in *Clark*.

claim.[6] Our task is to examine the limitations periods that New York has prescribed for various state causes of action and then select for § 1983 claims, as a matter of federal law, the limitations period for an "analogous" state cause of action. *Board of Regents v. Tomanio, supra,* 446 U.S. at 483–84, 100 S.Ct. at 1794–1795.

Having considered the alternatives, we conclude that a state law claim founded upon a statute is the appropriate analogy for a § 1983 claim. New York's highest court has characterized § 214(2) as applicable to "actions for wrongs not recognized in the common or decisional law." *State v. Cortelle, supra,* 38 N.Y.2d at 86, 378 N.Y. S.2d at 656, 341 N.E.2d at 224. While some § 1983 claims have counterparts in actions at common law, the constitutional tort remedied by § 1983 is "significantly different from" state torts, *Monroe v. Pape, supra,* 365 U.S. at 196, 81 S.Ct. at 488 (Harlan, J., concurring). And many § 1983 claims, such as Pauk's allegation of denial of tenure for exercising First Amendment rights, have no common law antecedents. A § 1983 claim founded on the Constitution, even if not within the category of claims to which § 214(2) precisely applies as a matter of state law, is sufficiently analogous to such claims to make the limitations period of § 214(2) appropriate as a matter of federal law.

Selecting the limitations period of § 214(2) satisfactorily accommodates relevant federal and state interests. Section 214(2) manifests New York's view of an appropriate limitations period that clearly applies to § 1983 suits founded on other federal statutes. *See Maine v. Thiboutot,* 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980). The interests in uniformity, which we have previously emphasized, *e. g., Quinn v. Syracuse Model Neighborhood Corp., supra,* are well served by applying § 214(2)'s limitations period to all § 1983 suits. Moreover, the three-year limitations period is consistent with the broad remedial purposes of § 1983. The six-year period of § 213(1) is considerably longer than the relatively short period of one year and ninety days, which the New York legislature has recently attempted to apply to some § 1983 suits, Gen.Mun. Law § 50–k(6). Finally, borrowing the three-year period of § 214(2) serves the useful purpose of maintaining continuity in the application of that statute's limitations period to § 1983 suits. It would be preferable if Congress would end the uncertainty that still exists in several states by legislating a uniform federal statute of limitations. Until that happens, we hold that the three-year limitations period of § 214(2) applies to § 1983 suits in New York.

The judgment is affirmed.

SOFAER, District Judge, concurring:

I concur in Judge Newman's thorough opinion, but write separately to emphasize that the limitations period of CPLR § 214(2) is not merely, as the Court holds, an appropriate provision to borrow for actions brought pursuant to 42 U.S.C. § 1983, but rather is squarely applicable to such suits.

---

**6.** When a state legislature enacts a statute of limitations explicitly applicable to a federal cause of action, a federal court must determine whether the state statute impairs the achievement of federal objectives, for example, by prescribing an unduly short limitations period, and whether the state statute discriminates against federal claims. *See Republic Pictures Corp. v. Kappler,* 151 F.2d 543 (8th Cir. 1945) (federal court may not enforce state statute of limitations enacted specifically to cover claims founded on any federal law that lacks a period of limitations), *aff'd mem.,* 327 U.S. 757, 66 S.Ct. 523, 90 L.Ed. 991 (1946); *Caldwell v. Alabama Dry Dock & Shipbuilding Co.,* 161 F.2d 83 (5th Cir. 1947) (state statute of limitations expressly covering claims founded on Fair Labor Standards Act of 1938 is unconstitution-al). When a state court determines that a state statute of limitations is applicable to a federal cause of action, a federal court must make an even more refined analysis. While recognizing the state court's authoritativeness in construing the state statute of limitations, the federal court must bear in mind that when the state court determines whether a particular state statute of limitations applies to a federal claim, the state court is deciding a question of federal law. This question, involving characterization of the federal claim in order to determine which state limitations period most appropriately applies, may be decided by a state court, *see Testa v. Katt,* 330 U.S. 386, 67 S.Ct. 810, 91 L.Ed. 967 (1947), but the state court decision cannot preclude a federal court's more authoritative decision on matters of federal law.

The three-year period of section 214(2) applies to "an action to recover upon a liability ... created or *imposed* by statute...." N.Y. C.P.L.R. § 214(2) (emphasis added). The issue, therefore, is not merely whether section 1983 creates liability, but also whether it is a statute that imposes liability. *Chapman v. Houston Welfare Rights Organization*, 441 U.S. 600, 99 S.Ct. 1905, 60 L.Ed.2d 508 (1979), did indeed hold that section 1983 does "not provide for any substantive rights"; as the Court put it, "one cannot go into court and claim a 'violation of § 1983'—for § 1983 by itself does not protect anyone against anything." *Id.* at 617, 99 S.Ct. at 1915. But the issue before the Court in *Chapman* was whether, for the jurisdictional purposes of 28 U.S.C. § 1343, section 1983 was a statute securing "equal rights" or "civil rights"—not, as in the present context, whether liability in a federal civil rights action is imposed by statute. The Court, in fact, recognized that section 1983 "served to ensure that an individual had a cause of action for violations of the Constitution, which in the Fourteenth Amendment embodied and extended to all individuals as against state action the substantive protections afforded by § 1 of the 1866 Act." *Id.* (footnote omitted). In other words, although the Constitution creates the substantive right asserted in a section 1983 action (other than one brought pursuant to *Maine v. Thiboutot*, 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980)), it is section 1983 that imposes civil liability and provides a cause of action in federal court. Although some authority exists for the proposition that suits against state officials for violations of constitutional rights may be brought directly under the Constitution, that is hardly a proposition so well-established as to render section 1983 mere procedural surplusage. Moreover, even if the Supreme Court were to hold that such an action were available in some circumstances, the statement that section 1983 is a liability-imposing statute would nonetheless remain true, for section 1983 would still constitute Congress's independent authorization of suit and would constitute sole authorization of suit in circumstances in which no direct action was available. Consequently, a section 1983 action falls precisely within the language of section 214(2): it is a suit in which liability is imposed by statute. *Clark v. Water Commissioners*, 148 N.Y. 1, 108 N.Y.S. 427 (1895), and *State v. Cortelle Corp.*, 38 N.Y.2d 83, 378 N.Y.S.2d 654, 341 N.E.2d 223 (1975), fortify this construction, because they are based upon the rationale that the statutes involved there neither created nor imposed any liability.

The recent decision in *Staffen v. Rochester*, 80 A.D.2d 16, 18–19, 437 N.Y.S.2d 821, 822–23 (4th Dep't 1981), incorrectly reads *Chapman* as holding that section 1983 is not a statute that creates liability. *Staffen* did not address the possibility that section 1983 could be viewed as a statute *imposing*, though not *creating*, liability. Moreover, the New York courts would not adhere to the proposition that section 1983 imposes no liability, in the face of an authoritative federal decision otherwise construing *Chapman* (a federal decision) and the nature of section 1983 (a federal statute).

Given that we view section 1983, even in light of *Chapman*, as a statute that imposes liability, we need not reach Judge Mishler's sensible but difficult conclusion that the Constitution is a "statute" for purposes of section 214(2). That position has implicitly been rejected by the New York courts, to which we are supposed to look for guidance as to the appropriate statute of limitations. A precise reading of *Chapman* spares us the need to engage in policy analysis that might suggest we are selecting a limitations period that we find convenient, rather than one squarely justified by state-law analogies.