Robert BRESNICK, Plaintiff,

v.

**MANHATTANVILLE COLLEGE,**
Defendant.

No. 93 Civ 7305 (VLB).

United States District Court,
S.D. New York.

July 19, 1994.

Order Granting Reconsideration
and Adhering to Decision Sept. 30, 1994.

Jeffrey M. Duban, New York City, for
plaintiff.

Paul Salvatore, Proskauer Rose Goetz &
Mendelsohn, New York City, for defendant.

## MEMORANDUM ORDER

VINCENT L. BRODERICK, District
Judge.

### I

This diversity of citizenship case presents
the repetitive challenge of treatment of acad-
emicians who are denied tenure and seek
judicial review of the decision of the institu-
tion, relying on breaches of contract because
of alleged departures from criteria listed in
institutional documents as relevant to the
decision.

### II

In May 1987 the defendant Manhattanville
College (the "College") hired plaintiff Robert
Bresnick ("Bresnick") as a full-time faculty
member in the Dance and Theater depart-
ment. His tenure review was scheduled for,
and held in, the fall of 1992 at which time
tenure was denied. This lawsuit was there-
after brought, alleging breach of contract and
breach of the duty of good faith and fair
dealing. Both parties have moved for sum-
mary judgment. The College's motion is
granted.

## III

The College's 1973 By–Laws stated that tenure is awarded on the basis of "teaching excellence, scholarship and service to the College." The Faculty By–Laws in effect at relevant times provided decisions "granting tenure are made by the President upon recommendation of the Department, the Committee on Faculty Status and the appropriate administrative officer."

The Committee is called upon to consider the recommendation of the Department "and all other pertinent materials." In case of disagreements, the department is to be consulted. In 1982 the Status Committee reaffirmed criteria for tenure involving categories of teaching, scholarly research, professional development, and service to the College, making "excellence in teaching of first importance."

The results of reviews by the Status Committee, Provost, and President are set forth in Appendix A to this memorandum order.* While the Committee voted four-to-one for tenure, the majority indicated that they were "concerned with the lack of interdisciplinary dance/theater productions ..."

The Provost stated that Bresnick had difficulty working with colleagues, and the President expressed concern about unwillingness to work with colleagues "in a sufficiently collegial and collaborative manner," raising "doubts about his ability to offer the necessary leadership ..."

## IV

■ Bresnick's principal argument is that collegiality or working with colleagues in a collaborative manner are not part of the criteria listed in the College's documents.

Cooperation and collegiality are essential to a department which may be called upon to work with other departments, and to train students to collaborate in the difficult task of orchestrating dance or drama programs in the outside world. Where what is mentioned is clearly within a relevant category, it would be blind in the extreme to require the category to be specified *in haec verba.* See *Avis Rent–A–Car System v. Hertz,* 782 F.2d 381, 385–86 (2d Cir.1986) (Friendly, J.) (referring to the "tyranny of literalness"); *Guiseppi v. Walling,* 144 F.2d 608, 624 (2d Cir.1944) (L. Hand, J. concurring), *aff'd.* 324 U.S. 244, 65 S.Ct. 605, 89 L.Ed. 921 (1945) ("There is no surer way to misread any document than to read it literally."); *The Federalist* No 37 (Madison) ("[N]o language is so copious as to supply words and phrases for every complex idea, or so correct as not to include many equivocally denoting different ideas.").

Courts, including those of New York the law of which is applicable in this diversity of citizenship case, are reluctant to intrude into decisions of this type, because doing so would substitute judicial evaluation of teaching effectiveness for the judgment of those charged with that function by the institution. See *Faro v. New York University,* 502 F.2d 1229 (2d Cir.1974); *Pauk v. Board of Higher Education,* 62 A.D.2d 660, 406 N.Y.S.2d 46 (1st Dept.1978), *aff'd.* 48 N.Y.2d 930, 425 N.Y.S.2d 92, 401 N.E.2d 214 (1979).

While the American Association of University Professors, representing one side of the inherent tension in such matters contends that the "precise terms and conditions of every appointment should be stated in writing and be in the possession of both institution and teacher before the appointment is consummated," [1] stress on overly detailed written criteria can act as a straitjacket preventing consideration of sometimes critical but more subjective factors. Courts accordingly decline to impose either regime on an institution, or distort language used to force an institution into a more paperwork-based mode. *Shields v. School of Law, Hofstra University,* 77 A.D.2d 867, 431 N.Y.S.2d 60 (2d Dept.1980). Indeed, in enforcement of antidiscrimination laws as well as contract law, subjective factors are neither *per se* improper nor a valid excuse for illegal behavior. See *Watson v. Ft. Worth Bank & Trust*

---

* Editor's Note: Appendix A was deleted for purposes of publication.

1. American Association of University Professors, *Policy Documents and Reports, 1990 edition, Academic Tenure.*

*Co.,* 487 U.S. 977, 108 S.Ct. 2777, 101 L.Ed.2d 827 (1988).

Bresnick also points out that the Provost had waxed eloquent in praise of Bresnick in a "To Whom It May Concern" letter dated January 6, 1992, but was highly critical of Bresnick in evaluating him for tenure in the fall of that year. It appears likely from the nature of the letter "To Whom It May Concern" that it was intended to help Bresnick obtain another job outside the College. Inability to work with those in the College would be a permissible reason for finding ineffective teaching and service to the College in that particular environment, but would not necessarily mean that Bresnick lacked the ability to perform well in another environment. Hence the inconsistent evaluations might each be correct when differing audiences and circumstances are taken into account.

No evidence or suggestion of any improper reason for the Provost's change of mind has been furnished or suggested. Nor is the Provost the final deciding authority.

## V

Under Fed.R.Civ.P. 56, summary judgment can be granted against a party with the burden of proof who fails to support its case with facts. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *SEC v. Research Automation Corp.,* 585 F.2d 31, 33 (2d Cir.1978). Bresnick has presented no evidence of breach of contract or of good faith by the College. Accordingly, plaintiff's motion for summary judgment is denied and that of the defendant College is granted. The complaint is dismissed; the clerk is directed to close this case.

SO ORDERED.

## MEMORANDUM ORDER ON RECONSIDERATION

### I

In May 1987 the defendant Manhattanville College (the "College") hired plaintiff Robert Bresnick as a full-time faculty member in the Dance and Theater department. His tenure review was scheduled for, and held in, the fall of 1992 at which time tenure was denied. This lawsuit was thereafter brought, alleging breach of contract and breach of the duty of good faith and fair dealing. Both parties moved for summary judgment. By memorandum order dated July 19, 1994 the College's motion was granted and the complaint dismissed.

Plaintiff now moves for reconsideration; the motion is granted and upon reconsideration the former decision is adhered to for the reasons described in the July 19, 1994 memorandum order and the additional reasons set forth below. No evidence suggesting either breach of contract or bad faith has been shown.

### II

The College's 1973 By–Laws stated that tenure is awarded on the basis of "teaching excellence, scholarship and service to the College." The Faculty By–Laws in effect at relevant times provided decisions "granting tenure are made by the President upon recommendation of the Department, the Committee on Faculty Status and the appropriate administrative officer." Tenure was denied, based upon what the College considered to be a deficiency in ability to work with other faculty members in an atmosphere of cooperation and collegiality so that dance and drama could be integrated with other activities. There is nothing in any contractual agreement preventing the institution from considering such matters in evaluating "service to the College." It is predictable and appropriate that in evaluating service to an institution, ability to cooperate would be deemed particularly relevant where a permanent difficult-to-revoke long-term job commitment is being made to the applicant for tenure.

### III

Plaintiff claims that a "To Whom It May Concern" letter given to plaintiff by a College official a few months before a negative recommendation was given by that official in regard to tenure shows bad faith on the part of the College. Despite availability of discovery, plaintiff has furnished no evidence to support any such inference. The "To Whom It May Concern" letter, obviously intended for use outside the institution, described conceded positive qualities of plaintiff.

A tenured position necessarily requires collaboration with colleagues—specifically those who are in the institution from which the applicant seeks a long-term job commitment. The "To Whom It May Concern" letter did not deal with plaintiff's ability to work successfully with the particular personnel with whom he must cooperate in other departments of the particular College in order to succeed in providing service to the institution in which plaintiff sought a permanent position. There would have been no occasion for the College official to discuss such institution-specific matters in providing a letter to plaintiff to be used in communicating with outsiders—obviously in connection with applications for positions elsewhere.[1]

There is no contradiction between a positive recommendation of an employee and recognition of his inability to get along with specific colleagues in a specific situation.

## IV

Plaintiff complains that defendant "introduced and relied on" material from confidential files. Plaintiff cannot and does not contend that the *court* relied on such material, and it did not. The court's decision was and continues to be based on absence of any indication of breach of contract or of the obligation of good faith on the part of the College.[2]

Plaintiff complains that private discussions unfavorable to plaintiff took place within the institution concerning his tenure application. There is nothing in any contract or rule of law provision prohibiting such conversations within a private organization, nor would it be practical to do so. A college tenure decision is not a judicial decision governed by the rules applicable to judicial proceedings.

SO ORDERED.

---

1. Neither on this motion for reconsideration nor in his original position does plaintiff deny that this is the purpose of the writing of the latter and its being given to plaintiff.

2. Plaintiff does not claim that his counsel was unable to inspect all relevant files for such use as plaintiff might wish to make of them.