OPINION OF THE COURT
 

 Memorandum.
 

 In these two cases, which arise out of the same facts, the respective orders of the Appellate Division appealed from should be affirmed, with costs.
 

 In May 1979, plaintiff Maidgold Associates (Maidgold), a tenant at 75 Maiden Lane, New York City, entered into negotiations with defendant City of New York (City), which was represented by Alex Liberman, to sublease the seventh, eighth and ninth floors at 75 Maiden Lane to the City. On August 16,1979, the Board of Estimate, by resolution, authorized the City to sublease the space “for use by the Mayor’s Office of Operations, or for such other purpose as the Commissioner of General Services may direct.” The resolution provided that the sublease would have no force and effect until approved by the New York State Financial Control Board (FCB) and the Mayor. By letter dated August 23,1979, Liberman requested that Maidgold proceed with necessary renovations, and assured Maidgold that it would be reimbursed for the work should the FCB withhold approval of the sublease.
 

 In September 1979, the City decided that the space was not suitable for the Mayor’s Office of Operations, and advised Maid-gold to stop the renovation work and seek an alternate tenant. The City remained interested in the space and sought to locate other agencies that might find the space suitable. In November 1979, Maidgold submitted a sublease to the City containing the terms authorized by the Board of Estimate resolution including the requirement of FCB approval. This sublease was fully executed by December 3, 1979, but FCB approval was not then obtained. In May 1980, it was determined that it would be
 
 *1123
 
 feasible for another City agency, the Department of Housing Preservation and Development (HPD), to occupy the seventh and ninth floors. At about the same time the Housing Development Corporation (not a City agency) expressed an interest in the eighth floor, and eventually entered into a lease for that space, commencing November 1, 1980. On August 5, 1980, the City and Maidgold executed an agreement modifying the sublease so as to exclude the eighth floor. This modification was to have no force and effect until the FCB and the Mayor approved both the modification and the original sublease. FCB and the Mayor’s Office of Management and Budget (OMB) approved the documents and the sublease, as modified, became effective.
 

 Maidgold commenced an action against the City and Liberman seeking damages in tort on the ground that the City, through Liberman, misled it into believing that it was bound by the executed sublease, and thus was not free to lease the space to another tenant. Maidgold also asserted that the City, in bad faith, delayed obtaining the necessary approval of the sublease. In its answer, the City alleged as a defense the failure of the complaint to allege that the sublease had been approved by the Mayor as required by the Board of Estimate resolution. Maid-gold thereafter commenced a second action against the City seeking to eject HPD from the seventh and ninth floors, alleging that HPD’s occupancy was illegal because the required approval from the Mayor’s office had not been obtained.
 

 In Maidgold’s action for damages based on the City’s alleged tortious conduct, the Appellate Division affirmed, without opinion, the order of Special Term granting the City’s motion for summary judgment dismissing the complaint. In the ejectment action the Appellate Division, two Justices dissenting, also affirmed an order of Special Term dismissing the complaint for failure to state a cause of action. The dissenters viewed the City’s affirmative defense in the first action of failure to allege Mayoral approval of the sublease as an attempt by the City to argue in one case that the sublease was invalid, and in the other that the sublease was validly approved.
 

 With respect to Maidgold’s action for damages, there is no evidence in this record that supports Maidgold’s contention that the City, in bad faith, delayed obtaining the necessary approvals of the sublease. Moreover there is no dispute that Maidgold was aware that the sublease would be of no force and effect until FCB and Mayoral approval was obtained. It had negotiated with the City’s agents previously and was bound to know the limits of their power
 
 (Moore v Mayor of City of N. Y.,
 
 73 NY 238;
 
 see also,
 
 
 *1124
 

 Oswego Falls Corp. v City of Fulton,
 
 148 Misc 170,
 
 affd
 
 241 App Div 650) and it had no right to rely upon representations they may have made beyond the extent of their authority, which authority is a matter of public record
 
 (Lindlots Realty Corp. v County of Suffolk,
 
 278 NY 45). Even assuming that Maidgold held the space for the City in reliance on misrepresentations by Liberman that approval would be obtained expeditiously, Liberman had no authority to make such representations, and thus the City is not responsible for any hardship resulting from restraint on Maidgold’s part in exercising its right to find a substitute tenant
 
 (see, Pauk v Board of Higher Educ.,
 
 62 AD2d 660, 664-665, and authorities cited therein).
 

 Maidgold’s action to eject HPD was properly dismissed as legally insufficient. FCB and OMB approval of the modified sublease was obtained. The Board of Estimate resolution authorized a sublease either to the Mayor’s Office of Operations or any other City agency. Since the space eventually was occupied by HPD, a City agency, the Board of Estimate resolution was complied with and no further certification of HPD’s occupancy was required. The City’s challenge to the legal sufficiency of the complaint in a separate action, dealing with unrelated issues, based upon the failure to allege proper approval of the sublease cannot be viewed as a “judicial admission” of the illegality of the City’s occupancy.
 

 Chief Judge Wachtler and Judges Jasen, Meyer, Simons, Kaye and Alexander concur.
 

 In each case: Order affirmed, with costs, in a memorandum.