In the Matter of RICHARD VLACHOS et al., Respondents-Appellants, v NEW YORK CITY LOFT BOARD et al., Appellants-Respondents, and NEW YORK CITY PLANNING COMMISSION, Intervenor-Appellant-Respondent, et al., Respondent.

First Department, July 24, 1986

## APPEARANCES OF COUNSEL

*Karen Hutson* of counsel *(Fay Leoussis* with her on the brief; *Frederick A. O. Schwarz, Jr., Corporation Counsel,* attorney), for appellants-respondents and intervenor-appellant-respondent.

*Iris S. Richman* of counsel *(Bandler & Kass,* attorneys), for respondents-appellants.

## OPINION OF THE COURT

FEIN, J.

The issue is whether Special Term erred in directing the New York City Loft Board to consider petitioners' untimely application for a hardship exemption filed on November 23, 1983. Multiple Dwelling Law article 7-C (§§ 280-287; the Loft Conversion Law) was enacted (L 1982, ch 349, § 1) to alleviate the serious housing shortage in New York City and the dangerous living conditions created, in part, by the illegal conversion of commercial and manufacturing loft buildings to residential use without compliance with applicable building codes and laws, including local housing maintenance standards. The law sought to prevent the "great hardship" that would occur if tenants were forced to relocate because of their uncertain status in these illegally converted buildings.

To that end the law requires owners of interim multiple dwellings (IMDs) to bring their buildings into compliance with residential housing codes concerning health, safety and fire, so that the owners of such formerly commercial buildings ultimately may obtain residential certificates of occupancy and pass along a portion of their compliance or legalization costs to the residential tenants through residential rentals to be determined by the Loft Board, appointed by the Mayor and created to administer the law, together with the New York City Planning Commission. Later rent adjustments are to be made according to Rent Guidelines Board adjustments for rent-stabilized buildings.

An IMD is defined as any building or portion thereof, formerly used for manufacturing, commercial or warehouse purposes, that lacks a certificate of occupancy and that as of December 1, 1981 had been occupied for residential purposes since April 1, 1980 by three or more families living independently of one another. The law further limits buildings which may qualify as IMDs to those located in certain geographical areas.

The law provides that a building owner, whose building appears from the face of the Loft Conversion Law to be an IMD, must register the building with the Loft Board and obtain a registration number. Although the owner has registered, coverage may still be contested upon the ground that the registered number of units have not been occupied for residential purposes during the period specified (Multiple Dwelling Law § 281). In addition to claiming the building is not covered by the Loft Conversion Law, the owner may also claim that the building should be exempt because the owner would suffer an "unjustifiable hardship" if required to comply. The owner who claims such a hardship must submit an application for a hardship exemption to the Loft Board "within nine months of the establishment of the loft board" (Multiple Dwelling Law § 285 [2]).

The Loft Board was established on September 30, 1982 (Multiple Dwelling Law § 282; Mayor's Executive Order No. 66, Sept. 30, 1982). Nine months from that date was June 30, 1983. Thus, the owner must have filed a hardship application by June 30, 1983. Loft Board regulations concerning hardship applications require notice of intent to file hardship applications by June 30, 1983 and require the perfected application to be submitted by October 31, 1983 (Loft Board Hardship Application Regulations § I [B] [1], [2]).

It is undisputed on this record that petitioners' building at 40 West 28th Street appears to be an IMD under the terms of the Loft Conversion Law. Petitioners did not file a hardship application by June 30, 1983. On November 23, 1983, they filed a combination application in which they contested coverage and applied for a hardship exemption. They were advised that their application for a hardship exemption was untimely and "cannot be accepted for consideration" although their coverage contest was being processed. Petitioners' application to extend the hardship application deadline was denied.

In this proceeding, petitioners claim they failed to file a

timely hardship application because the Planning Commission did not permit them access to their tenants' grandfathering applications until after the June 30, 1983 deadline for filing hardship applications had passed. A "grandfathering" application is an application by a residential tenant, to be filed with the Planning Commission, submitting proof that the tenant occupied the building for residential purposes on April 1, 1980. (Loft Board IMD Determination Regulations § I [A] [2].) Petitioners claim that their attorney called the Planning Commission on two occasions, June 22 and 29, and was told that no specific grandfathering application could be located until a master index to all applications was prepared. The Planning Commission, an intervenor in this action, denied receiving any such request until after the June 30, 1983 hardship application deadline had passed. Petitioners do not claim they advised the Planning Commission of their need for immediate access to the files as a basis for a hardship exemption by June 30, 1983. Petitioners do claim they failed to file a timely hardship application because the Loft Board did not advise them of the deadline for such an application. The statute plainly specifies the June 30, 1983 deadline. There is no basis on which petitioners can claim it was unknown to them.

The Loft Board had no duty to ensure that petitioners had read the law *(see, Soloff v Board of Educ.,* 90 AD2d 829, 830, *lv denied* 59 NY2d 602). This CPLR article 78 proceeding is premised upon the claim that the Loft Board's denial of petitioners' request for an extension was arbitrary and capricious, and that the Board and the city should be estopped from relying on the June 30, 1983 deadline date.

Special Term held that the Loft Board was estopped from enforcing the June 30, 1983 deadline because "the uncontroverted evidence indicates that the City Planning Commission denied petitioners access to the file until after the deadline had passed." The record is to the contrary. The Planning Commission plainly disputes that it denied petitioners access to the file, and there is no record of any such application prior to the deadline date.

The requirement of section 285 (2) that hardship applications "shall" be submitted to the Loft Board within nine months after establishment of the Loft Board (i.e., by June 30, 1983) is mandatory, not directory. Accordingly, the Loft Board properly rejected petitioners' hardship application as untimely. The use of the word "shall" in the statute is plainly a

word of command. Nothing in the statute indicates that its words were intended to be directory (McKinney's Cons Laws of NY, Book 1, Statutes § 177 [a]; *Matter of McCormick v Axelrod,* 59 NY2d 568, 571). This is consistent with the express purpose of the law, which is to prevent involuntary relocation of tenants. The law is precise in limiting the Loft Board's authority to grant exemptions. It provides for a procedure wherein tenants will be given notice of a hardship exemption hearing to the end that tenants not lose their homes due to a delay or insubstantial claims of owner hardship. It was not arbitrary or capricious for the Loft Board to decline to extend the filing time for hardship applications.

There is nothing in this record to indicate that the Loft Board or the Planning Commission misled petitioners, thus preventing them from complying with the hardship application deadline. Even if petitioners had been misled by an employee's failure or refusal to make the "grandfathering" file available, the Loft Board would not be estopped from enforcing the deadline, because it is prescribed by the statute.

Equitable estoppel is not available against the municipality if the municipality's authority is a matter of public record *(Maidgold Assoc. v City of New York,* 64 NY2d 1121, 1124). Assuming that the Loft Board, in not advising petitioners of the June 30, 1983 deadline, or that the Planning Commission, in allegedly not permitting access to its file until after the deadline had passed, had somehow misled petitioners into believing that they would receive an extension of the deadline, petitioners could not have relied on such conduct. The deadline was a matter of public record by virtue of its express inclusion in Multiple Dwelling Law § 285 (2). Petitioners are not aided even if the provision in the Loft Conversion Law was not considered to be a matter of public record. A party who deals with municipal officials is required to determine for himself the nature and extent of such officials' authority *(Pauk v Board of Higher Educ.,* 62 AD2d 660, 664, *affd* 48 NY2d 930).

Moreover, there is no evidence, statement or claim in the record that anyone, either at the Loft Board or the Planning Commission, told petitioners that they would be granted an extension of time, and then later denied them such extension. Petitioners raised no questions at all concerning a hardship exemption until they filed their combined application in which they premised their claim of hardship on events occurring in October 1983, three months after the deadline had passed,

when the alleged hardship arose out of their negotiations for the purchase of a flower farm adjoining the property.

Even if the Planning Commission had refused petitioners access to its files, petitioners' ability to protect their rights in no way depended upon what applications their tenants had filed. The law required petitioners to register as an IMD if the building appeared to meet the requirements of the law (§ 281). The requirement to register does not depend upon whether or not grandfathering applications have been filed (Loft Board IMD Determination Regulations § I [B] [2] [a]; [C]).

Estoppel cannot be relied upon to preclude a municipality from discharging its statutory responsibility *(Morley v Arricale,* 104 AD2d 207, 211, *affd* 66 NY2d 665, 667; *Matter of Albert Simon, Inc. v Myerson,* 36 NY2d 300, 303, *appeal dismissed* 423 US 908).

Moreover, petitioners themselves concede that the circumstances which impelled them to file the hardship application did not arise until long after the statutory deadline had expired, brought about by an alleged "recent expansion of their business", in connection with their purchase of a flower farm. The Loft Conversion Law provides that a "self-created hardship shall not be allowed" (Multiple Dwelling Law § 285 [2]).

Since petitioners were expressly on notice, by section 285 (2), that an application for a hardship exemption had to be filed by June 30, 1983 and they failed to meet that statutory deadline, the Loft Board properly denied their request for an extension of that time period. Neither the Loft Board nor the Planning Commission misled petitioners into believing that they did not have to meet the deadline.

Special Term incorrectly held that the Loft Board was estopped from enforcing the deadline.

Accordingly, the order and judgment (one paper) of the Supreme Court, New York County (Richard W. Wallach, J.), entered on April 11, 1985, granting petitioners' application to vacate the order of respondent New York City Loft Board, dated April 25, 1984, which denied petitioners' request for an extension of time to file a hardship application pursuant to Multiple Dwelling Law, article 7-C, § 285 (2), and directing the Loft Board to consider petitioners' hardship application on the merits without regard to the June 30, 1983 deadline for submitting such applications, should be reversed, on the law, without costs, and the order of the Loft Board confirmed.

SANDLER, J. P., CARRO and MILONAS, JJ., concur.

Order and judgment (one paper), Supreme Court, New York County, entered on April 11, 1985, unanimously reversed, on the law, without costs and without disbursements, and the order of the Loft Board dated April 25, 1984 is confirmed.