■ GERALD KATZ et al., Petitioners, v NEW YORK CITY LOFT BOARD et al., Respondents. In the Matter of CARON RESTAURANT, INC., Petitioner, v NEW YORK CITY LOFT BOARD et al., Respondents.—Determination of the respondent, the New York City Loft Board, dated August 18, 1988, which ruled that premises known as 44 West 54th Street, New York, New York, qualified as an interim multiple dwelling subject to coverage under article 7-C of the Multiple Dwelling Law, is confirmed, the petition denied and the proceeding brought pursuant to CPLR article 78 (transferred to this court by order of Sup Ct, NY County, Shirley Fingerhood, J., entered on Apr. 21, 1989), is dismissed, without costs or disbursements.

Petitioners Gerald Katz *et al.* purchased the five-story brownstone walkup herein in 1959, at which time it was a class B rooming house with the first two floors used commercially. Petitioners renovated the building, removing virtually all of the residential-type fixtures and amenities, and converted the premises to strictly commercial use, and thereafter leased office space to commercial concerns. In 1967, petitioners net leased the building. In June 1982, the prior net lessee went bankrupt. On June 3, 1982, petitioner Caron Restaurant, Inc., the present net lessee, assumed the net lease pursuant to an order of the Bankruptcy Court which extinguished third-party claims, prohibited use of the building for residential purposes or nonconforming uses to the present certificate of occupancy, and if there are such uses, provided that the lessee use best effort to evict the occupants or change the certificate of occupancy to allow for residential use.

In December 1984, a residential tenant applied to the Loft Board to declare the building an interim multiple dwelling (IMD) covered by article 7-C of the Multiple Dwelling Law (the Loft Law), stating that he and tenants of two other units resided in the building from October 1978 to the present.

Other residential tenants filed answers in support. The net lessee opposed on the grounds that the assignment prohibited residential use, the tenants were commercial tenants and not entitled to coverage, and that coverage would result in an unjustifiable hardship. The residential tenants, net lessee and owner thereafter met with the Loft Board Hearing Officers. One of the tenants submitted documents to prove residency during the Loft Law window period, April 1, 1980 through December 1, 1981, after which the Hearing Officers determined that the proof was sufficient to establish a prima facie case of residential occupancy for that unit. Neither the owner nor net lessee filed rebuttal evidence. The owner thereafter filed an answer opposing the application on the same grounds as the net lessee. The net lessee thereafter filed an amended answer alleging that the units were too small to be legalized, that the tenants did not live independently as they shared a bathroom facility, and that the Loft Law was not intended to cover a brownstone building.

Thereafter, at a formal hearing, tenants testified with respect to their periods of occupancy and the contents of their individual units, each stating that the individual units contained sleeping, eating and cooking facilities. Most of the tenants admitted sharing the third-floor bathroom facilities. The owner testified with respect to the building's history and its conversion to commercial use.

The Loft Board granted the application for coverage, finding that the building was an IMD comprised of five units. The Loft Board also held that since the Loft Law took effect on June 21, 1982, two weeks after the bankruptcy order, the language of said order extinguishing claims could not include claims pursuant to the Loft Law which had not yet come into existence. Thus, the Loft Board found that the bankruptcy order did not preclude application of the Loft Law. The Loft Board also found no conflict between coverage and the Bankruptcy Court order because said order recognized the possibility of residential use. The Loft Board also found that the residents had established sufficient indicia of independent living and that the shared bathroom facilities did not preclude such a finding. The Loft Board also determined that the claim of financial hardship was time barred and that the contention that the units did not meet the minimum size requirement of the local zoning law would not preclude coverage since that issue would be dealt with during the legalization proceeding after coverage was granted.

The owner and net lessee separately instituted this article

78 proceeding to annul the Loft Board order. The proceedings were consolidated and the court thereafter ruled that the Bankruptcy Court order did not preclude Loft Law coverage by recognizing the possibility of residential use. The proceedings were thereafter transferred to this court for a determination of whether the finding of the Loft Board was supported by substantial evidence.

Petitioner contends that the claims of the tenants were discharged although the bankruptcy order preceded the effective date of the Loft Law because the Loft Law may be applied retroactively *(Ardrey v 12 W. 27th St. Assocs.,* 117 AD2d 538). However, the right to so apply the Loft Law could not have vested until the date of its enactment and thus the Bankruptcy Court could only discharge claims in existence at the time. Further, because the Bankruptcy Court order included the possibility of residential use, no conflict existed between enforcement of the Bankruptcy Court order and coverage under the Loft Law since the Loft Law requires owners of IMDs to obtain a proper residential certificate of occupancy (Multiple Dwelling Law § 284 [1] [i] [D]).

Contrary to the position taken by the dissent, the Loft Law specifically does not limit coverage to "loft type" buildings. The statute expressly defines an interim multiple dwelling, without limitation, as *"any building* or structure or portion thereof located in a city of more than one million persons which (i) at any time was occupied for manufacturing, commercial, or warehouse purposes; and (ii) lacks a certificate of compliance or occupancy" (Multiple Dwelling Law § 281 [1]). The subject building falls within the statutory definition. Nor does the fact that the units contain less than the mandated minimum square footage required by the applicable zoning resolution preclude coverage since that issue is deferred until the subsequent legalization proceeding *(Nirco Investors Corp. v New York City Loft Bd.,* 131 AD2d 325, 326).

Sufficient evidence was presented to sustain the finding of the Loft Board that the statutory requirement of at least three residential tenants living independently of one another was met (Multiple Dwelling Law § 281 [1] [iii]). Nor does the fact that some of the tenants utilized communal bathroom facilities preclude the finding of sufficient indicia of independent living *(see, Matter of Morgan,* Loft Board Order No. 495, Nov. 20, 1984).

Finally, as hardship applications were required to be filed by June 30, 1983 (Multiple Dwelling Law § 285 [2]), the court properly found the hardship claims asserted herein to be

untimely *(Matter of Vlachos v New York City Loft Bd.,* 118 AD2d 378, 380-381). Concur—Milonas, Ellerin, Wallach and Rubin, JJ.

Kupferman, J. P., dissents in a memorandum as follows: I would grant the petition and annul the determination of the New York City Loft Board.

The legislative findings in section 280 of the Multiple Dwelling Law make it clear that the statute is designed to address "the increasing number of conversions of commercial and manufacturing loft buildings to residential use without compliance with applicable building codes and laws and without compliance with local laws regarding minimum housing maintenance standards".

The purpose of the Loft Conversion Law was to legitimize residential use of former commercial and manufacturing loft buildings. *(See, Matter of Vlachos v New York City Loft Bd.,* 118 AD2d 378.)* This building is a five-story brownstone, which was once properly for residential use and then changed to commercial use. The history of the statute makes it evident that it was not intended to apply to this type of real estate. *(See, Spring Realty Co. v New York City Loft Bd.,* 69 NY2d 657, *appeal dismissed* 482 US 911.)