[917 NYS2d 119]

JO-FRA PROPERTIES, INC., Appellant-Respondent, v LELAND BOBBE et al., Respondents-Appellants.

First Department, December 16, 2010

**APPEARANCES OF COUNSEL**

*Aury Bennett Stollow, P.C.*, New York City (*Aury B. Stollow* of counsel), for appellant-respondent.

*Robert Petrucci*, New York City, for respondents-appellants.

**OPINION OF THE COURT**

SAXE, J.

In this appeal, plaintiff landlord Jo-Fra Properties challenges the application of the provision of the Multiple Dwelling Law that precludes the owner of a building covered by the Loft Law (Multiple Dwelling Law art 7-C) from collecting rent if it fails to bring the building into compliance with the requirements of the Loft Law (*see* Multiple Dwelling Law § 302 [1] [b]). Primarily,

plaintiff asserts that it is unjust and inequitable to prevent it from collecting use and occupancy because its inability to legalize the residential lofts in its buildings was not its fault.

The buildings at issue are located on West 28th Street in Manhattan. Plaintiff purchased the buildings at 47 through 55 West 28th Street in 1977; the current principals of Jo-Fra inherited their interests in 2002. Defendants are the residents of 51, 53 and 55 West 28th Street. The buildings' lofts became occupied with residential tenants beginning in the 1970s; more residential tenants were accepted through the 1990s. All these tenants' leases specified that their premises were not for residential use.

As early as 1978, the Department of Buildings issued violations for the illegal residential use of some of the buildings' commercial lofts. Jo-Fra thereafter sent those tenants form letters directing them to end the violation or vacate the premises, but it took no follow-up steps. The Loft Law was enacted in 1982; in 1984, Jo-Fra registered one of the five buildings, 47 West 28th Street, with the Loft Board in the course of unsuccessfully attempting to contest the Loft Law's applicability to the building.

Jo-Fra took no steps to comply with the Loft Law with regard to those buildings before August 2004, when the tenants filed an application for coverage under Multiple Dwelling Law article 7-C, which application Jo-Fra opposed. After substantial litigation (*see Matter of Jo-Fra Props., Inc.*, 27 AD3d 298 [2006], *lv denied* 8 NY3d 801 [2007]), the parties stipulated that the tenants' application would be withdrawn without prejudice and that Jo-Fra would register the buildings as interim multiple dwellings. Jo-Fra filed the registration on October 1, 2007. Although the Loft Board did not initially accept the registration, purporting instead to grant the tenants' 2004 application, after a court order issued in the context of a CPLR article 78 proceeding directed it to do so, the Loft Board finally accepted Jo-Fra's registration by an order dated February 19, 2009.

Meanwhile, in the course of 2008, following its October 1, 2007 filing, Jo-Fra took a number of steps to begin bringing the buildings into compliance with the Multiple Dwelling Law. In August 2008 it filed architectural plans and alteration applications for all three buildings at issue here, and it filed narrative statements for number 55 on September 29, 2008 and for number 53 in January 2009. As of the date of its motion for use and occupancy, it had not yet filed a narrative statement for

number 51; its architect's affidavit dated February 17, 2009 stated that the narrative statement for number 51 would not be filed until after the Loft Board conference for number 53 was completed. No permits to perform the legalization work were obtained.

In July 2008, the tenants filed overcharge complaints with the Loft Board for the years 2004-2008. Also in 2008, a dispute began between Jo-Fra and the tenants regarding the tenants' use of public areas of the buildings, such as the hallways and staircases, to store personal property. Violations were issued by the Fire Department in the summer of 2008, and Jo-Fra notified the tenants to cease the use of the public areas. In August 2008, Jo-Fra served 10-day notices of termination based on failure to cure "violation of substantial obligation of tenancy" and purporting to terminate "license[s], if any," for the use of the public areas of the buildings.

Jo-Fra commenced this action in October 2008, seeking arrears in use and occupancy, ejectment of the tenants, and counsel fees. The tenants' answer seeks a money judgment for the amount of the overcharge and reciprocal counsel fees under Real Property Law § 234.

Both sides moved for summary judgment. The motion court granted the tenants' cross motion for summary judgment to the extent of dismissing Jo-Fra's use and occupancy claims, but granted Jo-Fra summary judgment on its cause of action for attorney's fees in connection with its remaining claims (2009 NY Slip Op 31976[U]). Each side appeals from the portion of the order adverse to its position.

Initially, there is no dispute here that the Loft Law applies to these buildings. The purpose of the Loft Law was to legalize de facto multiple dwellings that were not up to code (*see Matter of Lower Manhattan Loft Tenants v New York City Loft Bd.*, 66 NY2d 298, 302-303 [1985]). The law was intended "to confer rent stabilized status on legalized interim multiple dwellings" (*Matter of 91 Fifth Ave. Corp. v New York City Loft Bd.*, 249 AD2d 248, 249 [1998], *appeal dismissed* 92 NY2d 890 [1998]). Incremental conversion was provided for so as to allow a "transition" of former commercial spaces into the rent regulation system (*see Blackgold Realty Corp. v Milne*, 119 Misc 2d 920, 921 [Civ Ct, NY County 1983], *affd* 126 Misc 2d 721 [App Term, 1st Dept 1984], *affd* 119 AD2d 512 [1st Dept 1986], *affd* 69 NY2d 719 [1987]).

With the enactment of the Loft Law in 1982 (L 1982, ch 349), owners of interim multiple dwellings were first given a time-

table in which to "take all reasonable and necessary action to obtain a certificate of occupancy as a class A multiple dwelling for the residential portions of the building" (Multiple Dwelling Law § 284 [1] [i] [D]). If they complied with that legalization timetable, they were entitled to collect rent even if they had not yet obtained a certificate of occupancy (Multiple Dwelling Law § 285); otherwise, the lack of a proper certificate of occupancy would preclude a right to collect rent for those properties (Multiple Dwelling Law § 302 [1] [b]; *see Cromwell v Le Sannom Bldg. Corp.*, 171 AD2d 458 [1991]; *County Dollar Corp. v Douglas*, 161 AD2d 370 [1990]). The compliance timetables were extended when the Loft Law was renewed in 1992, 1996, and 1999 (Multiple Dwelling Law § 284 [1] [ii], [iii], [iv]).

The importance of compliance with those timetables while they are in place is illustrated by *Lipkis v Gilmour* (221 AD2d 229 [1995], *affg* 160 Misc 2d 50 [1994]). There, during the period after one statutory legalization timetable had expired and before a new legalization timetable had yet been enacted, an owner who had failed to comply with the prior legalization timetable was held to be precluded from suing for rent, up until the point that a new timetable was put in place by the Legislature.

While Jo-Fra has, albeit very belatedly, taken a number of the steps required by the Multiple Dwelling Law to legalize the buildings, it does not, and cannot, contend that it has taken *all* such steps, or that it has taken those steps within any statutory time frame. Indeed, Jo-Fra points out that it is, of course, impossible for it to meet the expired September 1999 deadline for filing an alteration application. Rather, it suggests that equity requires forgiving its noncompliance and allowing it to collect use and occupancy. It argues that Supreme Court's dismissal of its claim relies on an overly literal interpretation of the Multiple Dwelling Law and that the statute's literal application produces an absurd, unjust result. It also argues that the statute, being remedial, should be interpreted equitably to favor owners.

◼ As to Jo-Fra's argument that compliance is impossible because the tenants did not seek coverage until 2004, it is founded on an incorrect assumption. The Loft Law did not give owners the option of waiting until tenants requested coverage. The incremental legalization of a loft building by an owner is mandatory, not permissive; Multiple Dwelling Law § 284 (1) directs that an owner "shall" take all of the described steps within the specified time periods (*see Matter of Vlachos v New York City Loft Bd.*, 118 AD2d 378, 381-382 [1986]). The burden is on the owner, and on no one else (*id.* at 381).

Jo-Fra's affirmative obligation to register the buildings as interim multiple dwellings is not avoidable by a claimed lack of knowledge of the tenants' residential tenancy. In any event, its receipt of violations citing illegal residential use prior to the enactment of the Loft Law further establishes its awareness, as does its registration of one of its five buildings, number 47, in the course of unsuccessfully attempting to contest the statute's coverage. Moreover, Jo-Fra itself operated a wholesale flower business at numbers 49 and 51 until the 1990s, putting it in a position to be aware of the tenants' residential presence there. Yet, aside from registering number 47, it took none of the steps contemplated by Multiple Dwelling Law § 284 until its belated registration of the remaining buildings as interim multiple dwellings in 2007. Jo-Fra's failure to take the steps necessary to obtain a certificate of occupancy for the residential portions of the buildings precludes it from obtaining the use and occupancy award it seeks.

Nowhere in the record does a principal of Jo-Fra, or even its counsel, explain why Jo-Fra opted not to take any steps toward coverage until 2007, although it had loft tenants since the 1970s and had accepted more through the 1990s. This decision, not the actions of the tenants or the Loft Board, put Jo-Fra in its current bind.

The case law relied on by Jo-Fra is unpersuasive or inapposite. While in *Zane v Kellner* (240 AD2d 208 [1997]), a case postdating the Loft Law, this Court cited equitable considerations in directing the tenant to prospectively pay use and occupancy into court, notably, the motion court had denied the tenant's motion to dismiss the claim on the ground that it could not determine as a matter of law whether the Loft Law applied to the building.

To the extent that Jo-Fra argues that Multiple Dwelling Law § 284 is invalid for want of fairness, the assertion is unpreserved; in any event, it is without merit. Paragraph (i) of section 284 (1) allows the Loft Board to extend compliance deadlines on good cause shown, and paragraph (vii) makes other provisions for variances and similar applications. Jo-Fra asserted in Supreme Court that the Loft Board had announced that it would not accept section 284 (1) (vii) applications, but there is no showing that CPLR article 78 relief was sought, or even that the bar to such registrations was more than short-term. It therefore cannot even be said that Jo-Fra's predicament is permanent. Jo-Fra has abandoned its constitutional

argument and made no other argument against the statute's validity before Supreme Court.

While the Loft Law, for the first years of its enactment and renewal, sought to facilitate owners' voluntary conversions of loft buildings to residences, the Legislature's decision in 2001 not to further extend the deadlines for alteration applications and permits reflected a determination that the owners' interests no longer warranted that protection. If Jo-Fra had acknowledged the buildings' status and satisfied its owner obligations under the Loft Law, instead of spending years raising procedural defenses, it could have been in compliance long ago. While it had a right to pursue its defenses, it has no one to blame but itself for the position it is now in.

█ As to attorney's fees, Jo-Fra was not entitled as a matter of law to the award of attorney's fees that the motion court awarded based on its grant of summary judgment to Jo-Fra on its fourth through tenth causes of action. The grant of summary judgment to Jo-Fra on those causes of action was not grounded in a default by the tenants of a lease provision, but rather was based on the reasoning that the tenants had use of those spaces under a license revocable at will, and that once the landlord exercised its right of revocation, the tenants' continued use of those spaces constituted a trespass. Because there has been no factual finding that the tenants' use of the common areas constituted a violation of the provisions of their leases, Jo-Fra has not yet established that it is entitled to judgment on its cause of action for attorney's fees in connection with its fourth through tenth causes of action. Nor can the tenants' reciprocal claims under Real Property Law § 234 succeed in the absence of a default under the lease (see *Dupuis v 424 E. 77th Owners Corp.*, 32 AD3d 720, 722 [2006]).

Finally, the Loft Board has heard and determined the rent overcharge issue; therefore, this Court will not in the present context reach Jo-Fra's argument that defendants' overcharge claims are partly time-barred.

Accordingly, the order of the Supreme Court, New York County (Carol R. Edmead, J.), entered August 7, 2009, which, to the extent appealed from, denied plaintiff's motion for summary judgment on its causes of action for use and occupancy and to dismiss defendants' affirmative defense of noncompliance with the Loft Law and their counterclaim for rent overcharges, granted defendants' cross motion for summary judgment dismissing the use and occupancy causes of action, granted

plaintiff's motion to dismiss defendants' counterclaim for attorney's fees in connection with the use and occupancy causes of action, and granted plaintiff's motion for summary judgment on its cause of action for attorney's fees in connection with its fourth through tenth causes of action, should be modified, on the law, to deny plaintiff's motion for summary judgment on its cause of action for attorney's fees in connection with its fourth through tenth causes of action, and otherwise affirmed, without costs.

ANDRIAS, J.P., FRIEDMAN, NARDELLI and ACOSTA, JJ., concur.

Order, Supreme Court, New York County, entered August 7, 2009, modified, on the law, to deny plaintiff's motion for summary judgment on its cause of action for attorney's fees in connection with its fourth through tenth causes of action, and otherwise affirmed, without costs.