23-7947
*Ikedilo v. Statter, et al.*

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

### SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of The United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 2nd day of April, two thousand twenty-five.

PRESENT:
> REENA RAGGI,
> GERARD E. LYNCH,
> BETH ROBINSON,
> > *Circuit Judges.*

───────────────────────────────

OJINIKA IKEDILO, M.D.,

    *Plaintiff-Appellant*,

       v.                         No. 23-7947

MINDY STATTER, M.D., JODY KABAN, M.D., SCOTT MELVIN, M.D., MONTEFIORE MEDICAL CENTER,

    *Defendants-Appellees*.*

───────────────────────────────

─────────────

* The Clerk of the Court is respectfully directed to amend the official case caption as set forth above.

FOR PLAINTIFF-APPELLANT:    ANTHONY OFODILE, Ofodile &
                                                    Associates, P.C., Brooklyn, NY.

FOR DEFENDANT-APPELLEE:    JOSEPH ERIC FIELD, Littler Mendelson,
                                                    P.C., New York, NY.

Appeal from a judgment of the United States District Court for the Southern District of New York (Abrams, *Judge*).

**UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment entered on November 6, 2023, is **AFFIRMED**.

Plaintiff-Appellant Ojinika Ikedilo, M.D., sued Defendants-Appellees Mindy Statter, M.D., Jody Kaban, M.D., Scott Melvin, M.D., and Montefiore Medical Center ("Montefiore") under federal, state, and local law for alleged unlawful treatment in, and termination from, Montefiore's general surgery residency program. She now appeals the dismissal of some of her claims, and a grant of summary judgment on others. We assume the parties' familiarity with the underlying facts, procedural history, and arguments on appeal, to which we refer only as necessary to explain our decision.

## I.    Claims Dismissed Pursuant to Fed. R. Civ. P. 12(b)(6)

We review a district court's grant of a motion to dismiss under Rule 12(b)(6) without deference to the district court's reasoning. *City of Pontiac Gen. Employees'*

*Retirement System v. MBIA, Inc.*, 637 F.3d 169, 173 (2d Cir. 2011). If, accepting all factual allegations in the complaint as true and drawing all reasonable inferences in favor of the plaintiff, the complaint fails to plausibly state a claim, then dismissal under Rule 12(b)(6) is warranted. *See Littlejohn v. City of New York*, 795 F.3d 297, 306–07, 310–11 (2d Cir. 2015); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

A. *Statute of Limitations*

On October 28, 2019, Ikedilo, a Black woman, sued Montefiore, Statter, and two other Montefiore physicians for discrimination, hostile work environment, and retaliation based on her race, Nigerian national origin, and/or her pregnancy pursuant to 42 U.S.C. § 1981, Title VI of the Civil Rights Act of 1964 ("Title VI"), Title IX of the Education Amendment of 1972 ("Title IX"), § 504 of the Rehabilitation Act ("§ 504"), the New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL"). She also sued for failure to accommodate her alleged disability and pregnancy under Title IX, § 504, the NYSHRL, and NYCHRL. Finally, she brought several state law contract claims.

The district court dismissed the bulk of Ikedilo's claims as time barred. *Ikedilo v. Montefiore Medical Center*, No. 19-cv-9967, 2021 WL 3887717, at *6 (S.D.N.Y. Aug. 31, 2021). The parties do not dispute the applicable statute

3

limitations: Ikedilo's Title IX, Title VI, § 504, NYSHRL, and NYCHRL claims are subject to a three-year statute of limitations and her § 1981 claims are subject to a four-year statute of limitations. *See Curto v. Edmundson*, 392 F.3d 502, 503–04 (2d Cir. 2004) (applying a three-year statute of limitations to Title IX claims in New York); *Morse v. University of Vermont*, 973 F.2d 122, 125–27 (2d Cir. 1992) (holding that § 504 claims are governed by the relevant state's statute of limitations for personal injury actions and suggesting the same of Title VI claims);[1] *Banks v. General Motors, LLC*, 81 F.4th 242, 260 (2d Cir. 2023) (stating that the statute of limitations for NYSHRL cases is three years, and citing *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369 (2004), to conclude that the applicable statute of limitations for § 1981 claims is four years). Because Ikedilo filed her initial complaint on October 28, 2019, all Title IX, Title VI, § 504, NYSHRL, NYCHRL claims that accrued before October 28, 2016, are time-barred, and all § 1981 claims that accrued before October 28, 2015, are time barred.

---

[1] New York's statute of limitations for most personal injury actions is three years. *See* N.Y. C.P.L.R. § 214(5).

At issue is the *accrual date* for Ikedilo's claims based on her termination from the program.[2] Ikedilo argues that the district court erred in concluding that those claims accrued in April 2016 when Statter first told her that her residency would terminate on June 30, 2016. Because a reviewing panel had the authority to accept, reject, or modify the decision, Ikedilo argues that her claim did not accrue until November 2016 when the panel resolved her appeal.

We agree with the district court. In *Delaware State College v. Ricks*, the Supreme Court held in relevant part that the plaintiff's § 1981 claims ripened on the date the decision to deny him tenure "was made and communicated," *not* the date on which the Board of Trustees denied the plaintiff's grievance arising from the tenure decision. 449 U.S. 250, 258–62 (1980).[3] The Supreme Court emphasized that "the proper focus" for the purposes of the statute of limitations "is upon the time of the *discriminatory acts*," at issue. *Id.* at 258. It recognized that "employment termination result[ing] from discrimination can present widely varying circumstances," and that determination of the accrual date for a claim challenging

---

[2] Ikedilo does not challenge the dismissal on statute of limitations grounds of her state and local hostile work environment claims (Counts 8 and 11), or her federal and state retaliation claims for failing to provide her a recommendation in March 2015 (part of Counts 4 and 5).

[3] In quotations from caselaw and the parties' briefing, this summary order omits all internal quotation marks, footnotes, and citations, and accepts all alterations, unless otherwise noted.

a termination "necessarily must be made on a case-by-case basis." *Id.* at 258 n.9. The Court concluded that the availability of a grievance procedure to appeal the tenure denial did "not suggest that the earlier decision was in any respect tentative," and reiterated that "the pendency of a grievance, or some other method of collateral review of an employment decision, does not toll the running of the limitations periods." *Id.* at 261.

So too here. Ikedilo's Complaint pleads no facts suggesting that the termination decision conveyed to her in April 2016 was merely tentative under Montefiore's rules or by-laws. Rather, her Complaint suggests that, as in *Ricks*, the grievance procedure here offered a "*remedy* for a prior decision, not an opportunity to *influence* that decision before it is made." *Id.*

*Pauk v. Board of Trustees of City University of New York*, 654 F.2d 856 (2d Cir. 1981), cited by Ikedilo, warrants no different conclusion. As in *Ricks*, the *Pauk* Court assessed the accrual date of a denial of tenure claim by evaluating applicable rules as reflected in a New York statute governing faculty appointments and a collective bargaining agreement between the New York Board of Higher Education and the faculty union. *Id.* at 860. Because those rules did not require independent Board review of all tenure denial decisions, we held that the

6

plaintiff's challenge to the tenure denial accrued when he was first notified of the denial decision. *Id.* at 860–61. The same applies to the appeals process here. *See also Miller v. International Telephone and Telegraph Corp.*, 755 F.2d 20, 24 (2d Cir. 1985) ("[T]he mere possibility that the decision might be reversed was not enough to label it advisory or ineffective for time-bar purposes."); *Pinder v. City of New York*, 49 A.D.3d 280, 281 (N.Y. App. Div. 1st Dep't 2008) ("Contrary to plaintiff's argument[,] . . . an employment discrimination claim accrues on the date that an adverse employment determination is made and communicated to [the] plaintiff, and the possibility that the determination may be reversed is insufficient to toll the limitations period.").

Accordingly, the district court correctly dismissed Ikedilo's discrimination claims under New York state and local law arising from her termination (Counts 6, 7, 9, 10).[4]

> B.    *Count 2: Failure to Timely Send Summary Evaluation*

Ikedilo challenges the dismissal of her § 1981 discrimination claim relating to Statter's failure to timely send her summary evaluation to Westchester Medical

---

[4] Because her § 1981 claim is subject to a four-year statute of limitations, that federal claim arising from her termination (Count 1) survived Defendants' motion to dismiss. Ikedilo's Complaint does not assert a claim under Title VI arising from her termination.

7

Center ("WMC").[5]  The Complaint does not specify the duration of this delay, but it appears to have lasted more than one week, and less than than four.

To survive a motion to dismiss, a plaintiff must plead that "but for race, [the plaintiff] would not have suffered *the loss of a legally protected right*."  *Comcast Corp. v. National Association of African American-Owned Media*, 589 U.S. 327, 341 (2020) (emphasis added).   Ikedilo failed to plead such injury here.[6]

Insofar as Ikedilo argued that salary and health insurance were suspended due to Statter's delay in sending the summary evaluation to WMC, a careful reading belies that argument.  The Complaint alleges that her compensation and health insurance were set to terminate at the end of July 2016.  But it also alleges that "on July 27, 2016, Dr. Statter called [Ikedilo] to advise [her] that [she] would be paid her July salary, that her benefit[s] would be reinstated and that [Statter] would send [Ikedilo's] summary of evaluation to WMC."  App'x at 113 ¶ 140.

---

[5] Because Ikedilo's appellate briefing does not mention the dismissal of her § 1981 retaliation claim related to the same conduct (Count 3), we deem any challenge to the dismissal of that count waived.  *See Olivieri v. Stifel, Nicolaus & Co., Inc.*, 112 F.4th 74, 92 n.10 (2d Cir. 2024) (holding arguments not made in appellant's opening brief are waived).

[6] Because we affirm the district court's dismissal of Count 2 on this independent basis, we need not address the district court's alternate conclusion that Ikedilo failed to plausibly allege a connection between her race and Statter's delay in forwarding the summary evaluation.

Notably, the Complaint does not allege that her health insurance was actually suspended or terminated prior to the anticipated end-of-July date, that she received her salary for July later than expected, or that any delay otherwise impacted her pay or benefits. It just alleges that she "successfully completed her fellowship" with WMC. App'x at 118 ¶ 160.

Accordingly, the district court correctly dismissed Ikedilo's § 1981 discrimination claim arising from the alleged delay in Statter's sending her summary evaluation to WMC (Count 2).

C.     *Count 16: Failure to Accommodate*

On November 6, 2016, Montefiore informed Ikedilo that she could be reinstated to the general surgery program on July 1, 2017, provided that she scored in at least the 30th percentile on the January 2017 ABSITE exam and passed the USMLE Step 3 exam by the end of March 2017. That same day, Ikedilo gave birth to her second child and was diagnosed with a possibly cancerous thyroid condition. After Ikedilo failed to achieve the required score, her request that she be allowed to retake the exam was denied. Ikedilo asserts that Montefiore's refusal was "discriminatory [o]n [its] face," Appellant's Br. at 21, and constituted a failure to reasonably accommodate her pregnancy, pregnancy-related disability, and

9

other health problems which had prevented her from adequately preparing for the January 2017 exam.

Federal law requires that individuals be offered a *reasonable* accommodation. It does not require an educational institution "to make substantial modifications," *Southeastern Community College v. Davis*, 442 U.S. 397, 405 (1979), or offer accommodations that "would impose an undue hardship," *Dean v. University at Buffalo School of Medicine and Biomedical Sciences*, 804 F.3d 178, 186–87 (2d Cir. 2015). The ABSITE is offered only once per year,[7] and Ikedilo's requested accommodation would require Montefiore to allow her to operate as a fifth-year resident for over six months without satisfying its reinstatement condition that she score above the 30th percentile. The Complaint itself acknowledges that Ikedilo (1) had a history of poor performance on the previous exams; (2) had received negative clinical reviews based on operating room performance, including from a supervising physician who stated that "he would feel skeptical taking [her] judgment if she was the Chief Resident," App'x at 111 ¶ 129; and (3) had already been required to repeat a program year based on poor

---

[7] The district court took judicial notice of this fact when ruling defendants' motion to dismiss Ikedilo's original complaint. *See Ikedilo*, 2020 WL 5849049, at *11, *3 n.1. Neither party has disputed this fact at any point during the litigation or on appeal.

performance, a decision upheld by a reviewing panel.  On this record, we agree

with the district court that Ikedilo's requested accommodation was unreasonable

and conclude that her failure-to-accommodate claims under state and federal law

were correctly dismissed (Count 16).[8]

Moreover, the Complaint cannot support a plausible disability

discrimination claim based on Ikedilo's thyroid condition because Montefiore

imposed the challenged reinstatement requirements before Defendants, or even

Ikedilo, knew about it.

## II. Claims Resolved at Summary Judgment

We turn to the claims that survived the motion to dismiss—Ikedilo's § 1981

discriminatory termination claim, her § 1981 claim of retaliation in connection with

Statter's evaluations of her performance, and her state law contract claims.  We

review the district court's grant of summary judgment without deference to the

---

[8] Ikedilo argues that the NYSHL and NYCHL impose a different causation standard—a plaintiff is not required to show but-for causation, but only that discrimination played some role in an adverse employment action.  Her arguments are beside the point because causation is not relevant to the issue of whether the accommodation is *reasonable*.  She does not make any arguments relating to the burden of proof with respect to the reasonableness of an accommodation, so we do not reach that question. *See Jacobson v. New York City Health & Hosps. Corp.*, 988 N.Y.S.2d 86, 835 (2014) ("[U]nlike the [NYSHRL], the [NYCHRL] places the burden on the employer to show the unavailability of any safe and reasonable accommodation and to show that any proposed accommodation would place an undue hardship on its business.").

district court. *Byrne v. Rutledge*, 623 F.3d 46, 52 (2d Cir. 2010). Summary judgment is proper if, construing the evidence in the light most favorable to the nonmoving party, there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *Id.*

A.    *Count 1: Failure to Promote in 2016*

Ikedilo bore the initial burden to adduce evidence showing that an "adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent." *See Tolbert v. Smith*, 790 F.3d 427, 435 (2d Cir. 2015). On appeal, Ikedilo argues that she produced evidence that she was treated differently from residents who were not Black who received low ABSITE scores but were promoted. We disagree.

While disparate treatment can support an inference of discriminatory intent, *see Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000), a plaintiff must show that she was "similarly situated in all material respects to the individuals with whom she seeks to compare herself," *id.* at 39. This does not demand identicality, but there must be "a reasonably close resemblance of the facts and circumstances of [the] plaintiff's and comparator's cases." *Id.* at 40.

Ikedilo identified other residents who received low ABSITE scores but were not required to remediate. But that is the *only* shared metric that she identified.[9] It is undisputed that the decision to terminate Ikedilo's residency was informed by concerns about her patient care during surgery, technical skills, medical knowledge, and leadership skills, in addition to her low test scores. And it is undisputed that, in addition to low ABSITE scores, Ikedilo received several negative evaluations from supervising physicians and her mentors.

In sum, because Ikedilo has neither produced any direct evidence of discrimination nor identified a single other resident who was similarly situated in all material respects, summary judgment for the defendants on Ikedilo's § 1981 discriminatory termination claim (Count 1) was warranted.

B.      *Count 4: Retaliation Premised on Statter's Milestone Review*

The district court also granted summary judgment for the defendants on Ikedilo's § 1981 retaliation claim because it concluded that she failed to offer evidence that she had engaged in any activity protected by § 1981. A protected activity is "opposition to an unlawful employment practice." *Reed v. A.W.*

---

[9] Insofar as Ikedilo suggested at oral argument that she could not identify other metrics for comparators because she had not received their evaluations in discovery, counsel acknowledged that no such discovery issue was ever raised in the district court. *See* Fed. R. Civ. P. 56(d)(2).

*Lawrence & Co., Inc.*, 95 F.3d 1170, 1178 (2d Cir. 1996). And not just any employment practice, the plaintiff must oppose an employment practice that § 1981 makes unlawful. *Cf. Kelly v. Howard I. Shapiro & Associates Consulting Engineers, P.C.*, 716 F.3d 10, 14 (2d Cir. 2013) (describing protected activity in context of Title VII)*; see also Littlejohn*, 795 F.3d at 315 (stating that § 1981 retaliation claims are analytically identical to Title VII retaliation claims). A plaintiff fails to make out a *prima facie* case if their "objections at the time neither point[] out discrimination against particular individuals nor discriminatory practices by the employer." *Kelly*, 716 F.3d at 15.

It is undisputed that Ikedilo did not complain of racial discrimination either formally or informally at any point during her residency at Montefiore. She told Montefiore's Chief Operating Officer and Vice President only that she felt "singled out," but did not claim that was because of her race. App'x at 177 ¶ 161. It is also undisputed that Ikedilo did not complain of racial discrimination in either of her internal appeals. Because Ikedilo has not produced any evidence that she engaged in a protected activity, the district court correctly awarded summary judgment to Defendants on Ikedilo's § 1981 retaliation claim (Count 4).

C.      *Counts 12 to 15: Breach of Contract*

Ikedilo's breach of contract claims are based on Montefiore's decision to require her to obtain a particular ABSITE score to be promoted to the next year.  In her view, the imposition of this requirement as a condition of her advancement to PGY-5—both in 2015 and again as a condition of her reinstatement in 2017—is either a direct breach of her contract with Montefiore or a violation of the implied duty of good faith and fair dealing.

Ikedilo is correct that under New York law there is an implied covenant of good faith and fair dealing, meaning that neither party to a contract can "do anything which has the effect of destroying or injuring the right of the other party to receive the fruits of the contract."  *M/A-Com Sec. Corp. v. Galesi*, 904 F.2d 134, 136 (2d Cir. 1990).  However, "the implied covenant does not extend so far as to undermine a party's general right to act on its own interests in a way that may incidentally lessen the other party's anticipated fruits from the contract."  *Id.*

Each year Montefiore and its residents execute a contract, the "House Officer Agreement," which, among other things, specifies that "[r]eappointment and/or promotion *shall be at the sole discretion* of the Chairman of the Department and is contingent upon several factors including but not limited to: full compliance

15

with the terms of this Agreement, *satisfactory performance*, the availability of a position, closure or reduction in the size of the Program and furtherance of the Medical Center's objectives." App'x at 1785 (emphases added). There can be no dispute that ensuring that residents are qualified to care for patients before they graduate is a legitimate Montefiore objective. It is also undisputed that Ikedilo failed to satisfy program benchmarks and received consistent negative feedback from several supervising physicians about her surgical performances. On this record, no factfinder could conclude that Montefiore's decision to require Ikedilo to obtain an ABSITE score in at least the 30th percentile amounts to bad faith or a breach of Montefiore's promises, rather than Montefiore acting in its own interest to ensure that its residents are qualified to care for patients.

\* \* \*

We have considered Ikedilo's remaining arguments and conclude that they are without merit. For the reasons stated herein, the district court's November 6, 2023, judgment is **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

16